WAYNE E. PATTON, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Complete Auto Transit, Inc., Appellant).

Fifth District (Industrial Commission Division)   No. 5—85—0674WC

Opinion filed July 23, 1986.—Rehearing denied October 8, 1986.

James M. Gallen and Mary K. Fitzgerald, both of Evans & Dixon, of St. Louis, Missouri, for appellant.

Thomas C. Soraghan, of Belleville, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Respondent, Complete Auto Transit, Inc., appeals from an order of the circuit court which reversed the Industrial Commission's finding that the Commission lacked jurisdiction over petitioner Wayne E. Patton's application for adjustment of claim, because Patton failed to demonstrate he was a person whose employment is "principally localized" within the State of Illinois.

Petitioner, a truck driver, was hired by respondent on January 6, 1977, in St. Louis, Missouri, at respondent's main terminal. Petitioner's occupation requires that he deliver automobiles to various dealers in a number of States. Respondent is a Michigan corporation with two terminals. The principal facility is located in St. Louis with a second terminal in East St. Louis, Illinois.

Petitioner, an Illinois resident, worked solely out of the St. Louis, Missouri, terminal. On July 23, 1979, petitioner injured his hand while off-loading vehicles in Evansville, Indiana. Petitioner telephoned his dispatcher in St. Louis who directed him to return there, if possible. Petitioner was able to drive to Nashville, Illinois, his home, and there, at a doctor's direction, had his hand X-rayed. The next morning he returned the trailer to the St. Louis terminal and was examined by medical personnel of the respondent.

Although petitioner's family doctor diagnosed a fracture of the hand, X rays taken at the direction of respondent's doctors failed to substantiate the existence of the fracture. Thereafter, petitioner secured his own physicians who rendered professional services to him for his injury over the next two years.

The parties entered a stipulation that from the date of hire through the date of injury, petitioner had driven in various States in the following amounts:

| STATE | MILES | PERCENT |
|-------|-------|---------|
| Illinois | 30,326 | 48.7 |
| Tennessee | 11,770 | 18.9 |
| Kentucky | 11,157 | 17.9 |
| Georgia | 4,675 | 7.5 |
| Indiana | 2,581 | 4.1 |
| Missouri | 952 | 1.5 |
| Alabama | 308 | .5 |
| Mississippi | 292 | .5 |
| Louisiana | 88 | .1 |
| Arkansas | 73 | .1 |
| Kansas | 3 | |

The parties also stipulated that both Missouri and Indiana would have jurisdiction under their respective workers' compensation statutes for the injury which occurred.

Petitioner filed an application for adjustment of claim with the Industrial Commission. The arbitrator awarded 91 2/7 weeks temporary total disability payments. An additional award of 15% permanent partial disability was made for loss of the use of petitioner's right hand for the period of 28 1/2 weeks.

On appeal to the Commission, the decision of the arbitrator was reversed. The Commission determined that petitioner had failed to show that his employment was sufficiently associated with Illinois to be considered as "principally localized" in Illinois. The Commission dismissed the application for lack of jurisdiction. On *certiorari,* the circuit court reversed the Commission and reinstated the award of the arbitrator. The court found that since petitioner spent 48.7% of his employment time in this State, which the court considered to be "an extremely substantial amount" of time in comparison to petitioner's contact with other States, petitioner's employment was "localized in the State of Illinois." As additional support for its finding, the trial court considered the fact that petitioner and his family resided in Illinois and that the "effects" of the industrial accident took place in the State of Illinois. The Commission's finding that it lacked jurisdiction was overturned as against the manifest weight of the evidence. This appeal ensued.

At issue is an interpretation of section 1(b)(2) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1(b)(2)). Section 1(b)(2) was one of a series of amendments to the Act contained in Public Act 79—79, which became effective on July 1, 1975. The statute provides:

"The term 'employee' as used in this Act means: Every per-

son in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made, *** ."

It is conceded that the injury occurred and the contract for hire was entered outside of the State of Illinois. Therefore, we are limited to determining whether petitioner's employment was "principally localized" within the State of Illinois. The term is not defined in the Illinois Act. No cases have been called to our attention and research has not revealed any Illinois judicial decisions which have interpreted this portion of the statute.

Respondent argues that we should adopt the interpretation which the Commission has given the statute. In this case, the Commission noted that although petitioner drove more miles in Illinois than in any other single State, the majority of his total mileage was outside the State of Illinois. The Commission has apparently concluded that the term "principally" is synonymous with "majority." Petitioner argues that such a restrictive interpretation of the term is unwarranted and that this court should adopt the reasoning of the trial court that "principally localized" is satisfied if the contacts with the State are, in the trial court's words, "extremely substantial."

As the Act does not define the term, we deem it appropriate to consider legislative intent. The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 285 N.E.2d 129, *cert. denied* (1972), 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562.) In determining the legislative intent, courts should consider first the statutory language. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 389 N.E.2d 151.) Where the language is clear it will be given effect without resorting to other aids for construction. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585.) Where the language is ambiguous, however, it is appropriate to examine the legislative history. *People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 285 N.E.2d 129.

We believe that the statutory language employed here is reasona-

bly susceptible of both interpretations argued by the parties. Accordingly, we turn to the legislative history of this amendment.

■■ This amendment was one of several adopted by the legislature in response to the report and recommendations made by the National Commission on State Workmen's Compensation Laws (Commission). The Commission was established by Congress to undertake a comprehensive study and evaluation of State workmen's compensation laws in order to determine if such laws provided an adequate, prompt, and equitable system of compensation. (See *Report of the National Commission on State Workmen's Compensation Laws* (Report), 4 Larson, Workmen's Compensation Law app. G 609 *et seq.* (1986).) The Commission submitted its report to Congress and to the President on July 31, 1972. The report criticized many aspects of State workmen's compensation programs and made numerous specific recommendations for a modern compensation program. Several of these recommendations were designated by the Commission as essential, and it was urged that compliance by the States with these recommendations should be evaluated by July 1, 1975. The Commission further urged that Congress should intervene in the event that the States did not, on their own initiative, address these problems. 4 Larson, Workmen's Compensation Law app. G 609, 624 (Report) (1986).

Both prior and subsequent to the report of the Commission, the Advisory Committee on Workmen's Compensation Laws of the Council of State Governments was in the process of drafting a model workmen's compensation law. In response to the Federal Commission's recommendations, the advisory committee reviewed the text of the council's earlier model act and incorporated amendments as suggested by the Commission for consideration by the various State legislatures prior to the 1975 deadline. (See Workmen's Compensation and Rehabilitation Law (revised) (Model Act or Code), 4 Larson, Workmen's Compensation Law app. H 629, 639 (1986).) That report, the revised Model Act, was made available to the various State governments in June of 1974.

In direct response to the findings and recommendations of the Federal Commission, various amendments to the Illinois Act, including the section in question, were proposed. Recommendation 2.11 of the National Commission upon which the Illinois amendment was based stated:

"We recommend that the employee be given the choice of filing a claim for workmen's compensation in any State where he was hired, or where his employment was principally localized, or where he was injured." (4 Larson, Workmen's Compensation

Law app. G 609, 614 (Report) (1986).)

A parallel provision of the Model Act provides the following:

"Section 7. [*Extraterritorial Coverage*]

(a) If an employee, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury

(1) his employment is principally localized in this State, or

(2) he is working under a contract of hire made in this State in employment not principally localized in any State, or

(3) he is working under a contract of hire made in this State in employment principally localized in another State whose workmen's compensation law is not applicable to his employer, or

(4) he is working under a contract of hire made in this State for employment outside the United States and Canada." (4 Larson, Workmen's Compensation Law app. H 629, 648 (Model Act) (1986).)

The Model Act goes on to define the term "principally localized" as follows:

"(4) A person's employment is principally localized in this or another State when (1) his employer has a place of business in this or such other State and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other State." (4 Larson, Workmen's Compensation Law app. H 629, 649-50 (Model Act) (1986).)

An examination of the legislative debates on the bills which include the amendment to section 1(b)(2) of our Act clearly reflects that they arose as a direct result of the National Commission's recommendations. Since the Model Act was available to the legislature during the period that the amendments were proposed and considered, we believe it likely that the legislature was certainly aware of the interpretation of the term offered by the drafters of the Model Code.

Petitioner argues that the failure of the legislature to include a definition of the term "principally localized" should be considered an explicit rejection of the Code definition. We cannot agree. Although

we are mindful that the legislature did not adopt the Model Code, the absence of any attempt to provide an alternative definition for the term is, we believe, at the very least a persuasive indication that the legislature acceded to the definition placed upon the term by the drafters of the Model Code. Although not controlling, it is evident that the definition encompassed within the Code focuses first, and foremost, upon the situs where the employment relationship is centered. Only in the event that such situs cannot be established is the alternative test involving domicile and substantial working time to be considered. Under the facts of this case applied against the definition in the Model Code, petitioner's employment is principally localized in Missouri.

■ Apart from the definition in the Code, respondent also argues that other jurisdictions which have considered this question focus on where the employment relationship is centered and that the critical factor in such an analysis is the employee's base of operations, *i.e.,* the center from which he works. (*Stapleton v. Traveler's Insurance Co.* (La. App. 1978), 359 So. 2d 1051.) Other factors which determine where the situs lies include formation of the contract, source of remuneration to the employee, the existence of a facility from which the employee gets his assignments and is otherwise controlled, and the understanding that the employee will return to that facility after the out-of-State assignment is completed. *Phillips v. Oneida Motor Freight, Inc.* (1978), 163 N.J. Super. 297, 394 A.2d 891; *Nashko v. Standard Water Proofing Co.* (1958), 4 N.Y.2d 199, 173 N.Y.S.2d 565; *Jackson v. Tillamook Growers Co-op* (1979), 39 Or. App. 247, 592 P.2d 235.

In his treatise, Professor Larson offers a theory in this regard. He reasons that jurisdiction should be present only where the employment relationship is centered and that the situs of that relationship should be governed by rules similar to those governing questions concerning an individual's domicile. In this regard he states:

> "The big question under this theory is: What is meant by existence or localization of the relation within the state? The location of an injury is easy to identify; the location of a contract less so, but still subject to well-known legal rules; but the whereabouts of a relation between two people has a somewhat more mystic quality.
>
> The making of the contract within the state is usually deemed to create the relation within the state. The relation, having thus achieved a situs, retains that situs until something happens that shows clearly a transference of the relation to an-

other state. This transfer is usually held to occur when either a new contract is made in the foreign state, or the employee acquires in the foreign state a fixed and nontemporary employment situs. The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed. In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but having rooted his status in the local state by the original creation of the relation there, he does not lose it merely on the strength of the relative amount of time spent in the local state as against foreign states. He loses it only when his regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as his presence in any state, even including the original state, is by the nature of his employment brief and transitory." 4 Larson, Workmen's Compensation Law sec. 87.42, at 16—102 through 16—104 (1986).

We recognize that the analysis suggested by Professor Larson has been specifically rejected by the supreme court in cases involving questions of where the contract for hire was made. (*United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 19.) We do not believe, however, the analysis by which that decision was reached is applicable here because section 1(b)(2) specifically requires that the issue of principal localization be determined "regardless of the place of accident or the place where the contract was made."

■ We conclude that the employment-relationship test is a legitimate manner in which to approach the question. Under this analysis and upon the facts before us, it cannot be said that the principal localization of petitioner's employment was Illinois. Over-the-road truck drivers constitute a unique class of employees whose activity, by its very nature, is transient. The fact that a truck driver may spend a significant amount of time in one State does not detract from the essentially transitory nature of the activity in which he engages. Although the quantity of time an employee spends in a single locale may be a factor in the determination of principal localization of employment, it is not controlling. (*Stapleton v. Traveler's Insurance Co.* (La. App. 1978), 359 So. 2d 1051.) Here the facility from which petitioner received his assignments and was controlled was in Missouri. The source of remuneration was in Missouri. Petitioner worked out of re-

spondent's Missouri terminal exclusively and returned there upon the completion of each assignment. Although he spent a good deal of his time making deliveries in Illinois, this activity still constituted less than half of his total mileage in the employ of the respondent. Although petitioner is domiciled in Illinois, that, standing alone, is not sufficient to confer jurisdiction upon the Commission. In its capacity as a finder of fact, the Commission found that the petitioner's employment was not principally localized in Illinois. That finding is not contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court is reversed and the order of the Commission dismissing the application for want of jurisdiction is reinstated.

Circuit court reversed; Industrial Commission order reinstated.

BARRY, KASSERMAN, McNAMARA, and LINDBERG, JJ., concur.