MONTGOMERY TANK LINES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Carole Utter, Appellee).

First District (Industrial Commission Division)    No. 1—93—1601WC

Opinion filed April 29, 1994.

Womack & Galich, of Chicago, for appellant.

Kleiman, Whitney, Wolfe & Gore, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Carole Utter, sought death benefits pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) (the Act) for the death of her husband, James Utter, while in the employ of respondent Montgomery Tank Lines (MTL). James Utter was a truck driver for MTL and was killed in Indiana on September 30, 1986, in a work-related accident. Utter and his family lived in Lake Village, Indiana, having moved there from Lansing, Illinois, in September of 1973.

Decedent began working for MTL in October of 1979. He applied for employment as a driver at MTL's office in Gary, Indiana, on October 1, 1979. He took and passed his road test given at Gary on October 22, 1979. Thereafter he hauled loads for MTL, but was paid by Lake Shore Leasing (LSL), a company formed by a group of dispatchers and others involved with MTL. LSL leased equipment to MTL and ran the repair facility for MTL. From 1979 until July 18, 1983, Utter was paid by LSL. After July 18, 1983, Utter was paid by MTL. Utter leased his truck from LSL and worked for MTL as an owner-operator. On January 18, 1985, Utter began leasing his truck from MTL.

From 1976 until October of 1979, MTL's offices were located in Lansing and Willow Springs, Illinois. There was also an office in Summit, Illinois, which handled billing and payroll. In October of 1979, the entire operation was moved to Gary, Indiana. From October of 1979 until early 1981, Utter was dispatched out of Gary. The facility in Gary was an LSL facility, but dispatching was done by MTL. In early 1981, MTL moved its operations to Summit, Illinois. The repair facility and the safety office remained in Gary, Indiana. In 1982, the

main office returned to Gary, Indiana, but the dispatch office remained in Summit. In February of 1986, the main office moved to Plant City, Florida, but the dispatch office remained in Summit. From 1981 on, MTL's dispatch office was in Summit, Illinois. All drivers were dispatched from Summit, reported there for their records, and received their paychecks from that location. Owners were required to file paperwork on a daily basis, and as of 1983, drivers were instructed by the terminal manager to list Summit as the home terminal on all paperwork. In 1982, separate offices were established for the food division and the chemical division. Utter worked for the chemical board, which was headquartered in Summit. The food division was headquartered in Gary, Indiana. In 1985, the chemical division was further divided into the solvent division and the resin division. Utter worked for the solvent division. The terminals for solvents and resins were separate, but were located next to each other in Summit. Utter would have the tank of his rig washed out at the terminal in Summit. In 1986, Utter became a "dedicated hauler" for the Unocal Chemical Division account. This meant he hauled loads only for Unocal. He would pick up a load from Unocal, deliver it, and then come back empty.

As part of its records, MTL kept track of the total mileage each driver covered on each trip, plus mileage traveled by each driver in each State. According to the mileage report for the period covering the third quarter of 1984 through the third quarter of 1986, decedent drove a total of 170,000 miles over an eight-State area with 32,500 miles, or 19%, being driven in Illinois. During the one-year period prior to his death, Utter drove a total of 79,700 miles, 14,700 of which were driven in Illinois. In 1986, he drove 52,000 miles, 12,000 of which were driven in Illinois.

Carole Utter sought and received benefits pursuant to Indiana law. She also sought benefits under Illinois law, but MTL challenged Illinois jurisdiction. Arbitration hearings were held on August 9, 1988, and November 4, 1988. On March 31, 1989, the arbitrator ruled that Illinois jurisdiction was proper, based upon the decedent's employment being principally localized in Illinois, and awarded Carole Utter death benefits pursuant to the Act. The arbitrator's decision was affirmed by the Industrial Commission (the Commission). Judicial review was sought by MTL. During the pendency of its review in the circuit court, MTL filed a motion to withdraw its stipulation as to wages and requested remand of the case to the Commission on this issue. For unknown reasons, neither the motion nor the notice thereof was included in the record, but the record does contain a copy of each party's brief in connection with the motion. The circuit

court denied the motion, but its order confirming the decision of the Commission made no reference to either the motion or its disposition thereof.

On appeal, MTL first argues that the Commission's decision finding that Utter's employment was principally localized in Illinois was against the manifest weight of the evidence, because most of Utter's working time was spent in other States.

The Commission therefore erred, MTL maintains, in finding that Illinois has jurisdiction.

Section 1(b)(2) of the Act defines as an "employee":

"Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or nonfatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made, and including aliens, and minors who, for the purpose of this Act are considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).)

Under section 1(b)(2), there are three bases for acquiring Illinois jurisdiction: (1) if the contract for hire is made in Illinois; (2) if the accident occurred in Illinois; and (3) if the claimant's employment is principally localized in Illinois, regardless of where the contract for hire was made or where the accident occurred. In the present case, the Commission found jurisdiction based upon Utter's employment being "principally localized" in Illinois.

The seminal case interpreting the phrase "principally localized" is *Patton v. Industrial Comm'n* (1986), 147 Ill. App. 3d 738, 498 N.E.2d 539. In *Patton*, the claimant, a truck driver, was hired by the respondent in St. Louis, Missouri, at the respondent's main terminal. Claimant was a truck driver, and his duties required him to deliver automobiles to various dealers in a number of States. Respondent's principal facility was in St. Louis, Missouri, but it also had a terminal in East St. Louis, Illinois. Claimant worked solely out of the St. Louis terminal. Claimant was injured while off-loading vehicles in Evansville, Indiana. The parties stipulated that claimant had driven a total of 66,225 miles in 11 States, 30,326, or 48.7%, having been driven in Illinois. Claimant had driven almost three times as many miles in Illinois as any other State.

■ The Commission found that claimant had failed to show that his employment was sufficiently associated with Illinois to be considered "principally localized" in Illinois. The circuit court reversed, finding that because claimant spent 48.7% of his employment time in Illinois, an amount of time the court considered "extremely substantial" in comparison to his contact with other States, claimant's employment was principally localized in Illinois. On appeal, this court reversed the circuit court. After noting the ambiguity of the term "principally localized" and the fact that no previous cases had defined the term, we turned to an examination of the legislative history to determine the intent of the legislature. We concluded that the legislature intended that the term be defined as it is in the Model Act drafted by the Advisory Committee on Workmen's Compensation Laws of the Council of State Governments. (*Patton*, 147 Ill. App. 3d at 743, 498 N.E.2d at 542-43.) The Model Act defines the term "principally localized" as follows:

> "A person's employment is principally localized in this or another State when (1) his employer has a place of business in this or such other State and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other State." (4 A. Larson, Workmen's Compensation app. H, 629, 649-50 (1977).)

As we noted in *Patton*, it is evident that the definition encompassed within the Code focuses first, and foremost, upon the situs where the employment relationship is centered. Only in the event that such situs cannot be established is the alternative test involving domicile and substantial working time to be considered. (*Patton*, 147 Ill. App. 3d at 744, 498 N.E.2d at 543.) In reversing the circuit court, we noted in *Patton* that the factors which determine the situs of the employment relationship included: (1) where the employment relationship is centered, *i.e.,* the center from which the employee works; (2) the source of remuneration to the employee; (3) where the employment contract was formed; (4) the existence of a facility from which the employee received his assignments and is otherwise controlled; and (5) the understanding that the employee will return to that facility after the out-of-State assignment is complete. We further noted that the quantity of time an employee spends in a particular locale could be a factor in determining the principal localization of employment, but that it was not controlling.

■ Whether a claimant's employment is principally localized in Illinois is a question of fact for the Commission, and its resolution of this question will not be disturbed on appeal unless it is against the

manifest weight of the evidence. (*Patton*, 147 Ill. App. 3d at 746, 498 N.E.2d at 544.) "The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]" (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.) In the present case, the situs of the employment relationship was clearly in Illinois. The decedent received his dispatch orders from Summit, Illinois. He received his pay from Summit, turned in his paperwork at the terminal in Summit, and washed his trailer out there. Further, an analysis of his logs reveals that, almost without exception, his runs began and ended in Illinois. The Commission's determination that decedent's employment was principally localized in Illinois was not against the manifest weight of the evidence, and it properly concluded that Illinois had jurisdiction.

■ The next argument raised by MTL is that the circuit court erred in not allowing it to withdraw from its stipulation as to wages. Having failed to raise this issue before the Commission, however, MTL cannot now raise it on appeal. *Yellow Freight Systems v. Industrial Comm'n* (1984), 124 Ill. App. 3d 1018, 464 N.E.2d 1256.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and SLATER, JJ., concur.