HUNTER CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Louis Benz, Appellee).

First District (Industrial Commission Division)    No. 1—93—3424WC

Opinion filed October 28, 1994.—Rehearing denied January 25, 1995.

Kane, Doy & Harrington, Ltd., of Chicago (Michael J. Brennan, of counsel), for appellant.

Cullen, Haskins, Nicholson & Menchetti, of Chicago (Charles G. Haskins, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Louis Benz, sought benefits pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) for injuries he sustained while in the employ of respondent, Hunter Corporation (Hunter). Benz was employed as a journeyman boilermaker at Commonwealth Edison's State Line Power Generating Station (State Line) in Hammond, Indiana. Commonwealth Edison had contracted with Hunter to make certain repairs at the State Line facility. Hunter had hired Benz through Local Union No. 1 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (Local 1), of which Benz was a member since 1974.

On November 7, 1988, while working at the State Line facility, Benz sustained an injury to his groin and low back as a result of lifting a box that weighed approximately 40 pounds.

Pursuant to union rules, union members could not seek employment on their own, but were required, as a condition of their union

membership, to seek employment through their local union. Likewise, contractors wishing to employ Local 1 members do so through a referral system. This referral system is set forth in the "Local Joint Referral Rules" (Referral Rules), which are part of a labor agreement between Local 1 and the Boiler and Tank Contractors of Illinois and such other companies that became a signatory thereto. Hunter was a signatory to this agreement.

An arbitration hearing was held on May 30, 1991. John Skermont, president of Local 1, testified that if a company that is a signatory to the union agreement wishes to employ a member of Local 1, it will call Local 1 and request workers with the necessary skills. Local 1 maintains a list of workers with various skills and qualifications. Upon requesting a worker, the contractor is assigned the next qualified person on the referral list. Skermont also testified that pursuant to section 7.2.2 of the Referral Rules, the contractor retained the right to reject any applicant referred to it. Such rejection could be based upon physical incapacity or a lack of qualifications. Skermont testified that if Local 1 referred an individual to an employer and that employer had no work, the individual in question would receive two hours' pay plus travel expenses.

Skermont further testified that although Local 1 had its offices in Illinois, the geographic area over which it had jurisdiction covered that portion of Indiana where the State Line facility was located. Accordingly, Local 1 had the right to refer its members to contractors working at that facility.

William W. Segiet, manager of field operations for the boiler division of Hunter Corporation, testified that upon being awarded the job at State Line, Hunter determined how many boilermakers it would need and a call was then placed to Local 1 requesting that number of workers. Upon reporting to work at the jobsite, each worker was required to fill out various forms, including an employment record and State and Federal tax forms.

Benz testified that on October 24, 1988, he received a call from John Shue, the referral officer at Local 1, and was told to report to Hunter at the State Line facility in Indiana. Benz filled out the required paperwork and began working.

Benz worked from October 24, 1988, through November 6, 1988, without incident. The following day, he was attempting to lift a box weighing approximately 40 pounds when he felt a sharp pain in his groin. Benz reported the incident to the shop steward, the general foreman, and the superintendent, and was then taken to the emergency room at South Chicago Community Hospital. At the hospital, Benz complained of pain in his right inguinal area and right lumbar

area. Benz subsequently saw his family physician, Dr. Buzzano, who initially prescribed medication for lumbar strain and acute right inguinal muscular strain. Dr. Buzzano later recommended physical therapy and that Benz remain off work.

Benz's condition did not improve, and on January 12, 1989, Dr. Buzzano referred him to Dr. Robert Sawchyn, an orthopedic surgeon. Dr. Sawchyn first saw Benz on January 23, 1989. Dr. Sawchyn diagnosed a lumbosacral strain and recommended medication, back exercises, and utilization of back support. A CT scan and an EMG were subsequently performed. The CT scan was normal and the EMG disclosed a possible early S1 radiculopathy. Benz also started physical therapy, and on April 5, 1989, received injections of Marcaine and Celestone. Dr. Sawchyn released Benz to return to work on April 24, 1989.

Benz also saw Dr. Barry Fisher, who found loss of forward flexion and backward extension, as well as lateral bending. At Hunter's request, Benz saw Dr. Marshal Matz on March 29, 1989. Dr. Matz opined that Benz was able to work as of that time.

The arbitrator ruled that Illinois had jurisdiction because the contract for hire had been made in Illinois when the call was placed to Local 1. The arbitrator further found that Benz's injury arose out of and in the course of his employment with Hunter. Based upon the testimony of Dr. Sawchyn, the arbitrator found that Benz was temporarily and totally disabled for the period from November 8, 1988, through April 23, 1989. The arbitrator also concluded that, based upon Benz's lack of prior back problems, his testimony that he continues to experience pain in his back if he stands or sits too long, and the finding of Dr. Fischer, Benz was permanently and totally disabled to the extent of $7^1/2$% of the man as a whole.

On review, the Industrial Commission (the Commission) affirmed the decision of the arbitrator in a 2 to 1 decision, finding the final act necessary to form the contract, the acceptance of the offer of employment, occurred at the union hall in Illinois, and that Illinois therefore had jurisdiction. The Commission also found significant the fact that a company was obligated to pay an individual two hours' pay plus travel expenses if it declined to hire him. The Commission's decision was confirmed by the circuit court of Cook County.

On appeal, Hunter argues first that the Commission's finding that Local 1's receipt of a telephone call requesting referral of its members for possible employment constituted the last act necessary to form an employment contract is against the manifest weight of the evidence.

The requirements for Illinois jurisdiction are set forth in section 1(b)(2) of the Act, which provides:

"Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made, and including aliens, and minors who, for the purpose of this Act are considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees." Ill. Rev. Stat. 1987, ch. 48, par. 138.1(b)(2).

A contract is made where the last act necessary to give validity occurs. (*F&E Erection Co. v. Industrial Comm'n* (1987), 162 Ill. App. 3d 156, 514 N.E.2d 1147.) The determination of whether a contract for hire has been made in Illinois is a question of fact and the determination thereof is the province of the Commission. (*United Airlines, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 126, 449 N.E.2d 119.) The Commission's resolution of a question of fact will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. A finding is not contrary to the manifest weight of the evidence unless the opposite conclusion is clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.

The present case is somewhat analogous to the recent case of *Chicago Bridge & Iron, Inc. v. Industrial Comm'n* (1993), 248 Ill. App. 3d 687, 618 N.E.2d 1143. In *Chicago Bridge*, the employer, a Minnesota company, hired the claimant, an employee residing in Illinois, pursuant to a labor agreement between the employer and the national transient division of the International Brotherhood of Boilermakers *et al*. The employer telephoned the claimant and asked if he was available for employment in Minnesota. After being informed of the wage rate, claimant agreed to go to the jobsite. While reporting for work, claimant was struck by a passing vehicle several hundred yards from the employer's parking lot. In affirming the Commission's determination that Illinois had jurisdiction, this court held that the testimony of the employer's field personnel manager that a job offer was made and accepted in Illinois sufficient to support the Commission's determination that the contract for hire was made in Illinois. *Chicago Bridge*, 248 Ill. App. 3d at 692, 618 N.E.2d at 1147.

While there is no similar testimony in the present case, we

find that there is nevertheless sufficient evidence to support the Commission's determination that Illinois had jurisdiction. Segiet testified that upon determining the number of workers he needed, he would call Local 1 to request them. Skermont testified that Local 1 provides workers when signatories to the labor agreement call to request them. Benz testified that he received a call from Shue telling him to report to the jobsite in Indiana. Upon arriving, he filled out the required tax forms and employment record. Segiet testified that the employment blank was not a job application, but referred to it as a "sign-up form." Although the referral rules stipulated that the employer retained the right to reject a referred employee, Skermont testified that if the rejection were based on other than physical incapacity or lack of qualifications, a grievance would be filed. We also find significant, as did the Commission, the fact that a prospective employee was entitled to two hours' pay if he appeared in response to a referral and the employer had no work for him.

Neither *Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 404 N.E.2d 253, nor *Energy Erectors, Ltd. v. Industrial Comm'n* (1992), 230 Ill. App. 3d 158, 595 N.E.2d 641, cited by Hunter in support of its position, involved a union agreement or any type of union referral system, a key element in the present case. In *Morris v. Industrial Comm'n* (1973), 55 Ill. 2d 563, 304 N.E.2d 606, also cited by Hunter, the claimant was a union worker, but his testimony that the union was his agent and that he accepted the job offer in Illinois was contradicted by testimony of both the union's business agent and the employer's supervisor. Further, the relevant contract documents between the union and the employer were never admitted into evidence.

We find that the Commission's determination that the contract for hire was made in Illinois is not against the manifest weight of the evidence and that Illinois has jurisdiction.

Hunter next argues that the Commission's finding that the union was acting as Hunter's agent was against the manifest weight of the evidence. Hunter maintains that the Referral Rules specifically provide that the employer retains the right to reject any job applicant, and that the language of both the Referral Rules and the power house maintenance modification agreement, to which both Local 1 and Hunter were signatories, clearly demonstrates that the union's role was limited to making referrals of qualified applicants.

■ With respect to the employer's exclusive right to reject applicants, again we note Skermont's testimony that if the rejection were based on anything but lack of physical capacity or adequate qualifications, a grievance would be filed. We also note the language of the preamble to the joint referral rules, which states in part:

"WHEREAS, it is the desire of those *employers who by agreement establish the local lodge as the exclusive referral agent* to retain some means of effective control of the work force, which is casual and transient by nature of the industry by negotiated, employment-related discipline implemented ministerially through the office of the local lodge." (Emphasis added.)

Such language clearly demonstrates the employer's intent that Local 1 act as its exclusive agent. Several other sections of the referral rules also refer to Local 1 as the "referral agent." These references, coupled with the fact that both Hunter and Local 1 members agreed that employment would be handled exclusively through Local 1, indicate that Local 1 was the exclusive agent for both Hunter and its members.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and SLATER, JJ., concur.