17 April 2000

No. 5-98-0665WC

RICHARD L. COWGER, )  Appeal from the

)  Circuit Court of

Appellant, )  Effingham County.

)

v. )

)

THE INDUSTRIAL COMMISSION 
et al.
, )  Honorable

)  Steven P. Seymour,

(D.J. Baker Trucking, Inc., Appellee). )  Judge Presiding. 

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant, Richard L. Cowger, an Illinois resident, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 
et seq.
 (West 1998)) for injuries resulting from a single-vehicle accident that occurred in Texas during the course of his employment with D.J. Baker Trucking, Inc. (D.J. Baker), which is located in Indiana.  The arbitrator concluded that Illinois had jurisdiction over this matter and determined that claimant suffered 25% permanent partial disability of the person as a whole.  The Industrial Commission of Illinois (Commission) reversed, finding that Illinois lacked jurisdiction, and the circuit court affirmed the Commission.  Claimant appeals, contending that Illinois may exercise jurisdiction over this matter because (1) the last act necessary to form a valid employment contract occurred in Illinois; and (2) his employment was principally localized in Illinois.  We disagree and therefore affirm.

FACTS

In early October 1992, claimant, an over-the-road truck driver, placed a call from his home in Montrose, Illinois, to John Baker in Cambridge, Indiana.  John, who is now deceased, and his wife, Evelyn, owned D.J. Baker Trucking, located in Cambridge, Indiana.  Although claimant was employed as a driver by Tom Land Company (TLC), he called John regarding potential employment opportunities with D.J. Baker.

Claimant told John that he was looking for work, and John replied that he would be receiving tractors mid-month.  According to claimant, when he asked if one of the tractors would be available John replied, “You are not job hunting anymore.”  Claimant understood this to mean that, as of this conversation, he was hired by John as an employee of D.J. Baker.  Accordingly, claimant gave notice to TLC that he would be quitting.  After giving notice, claimant made at least one more run for TLC.  During one run, claimant stopped at D.J. Baker’s Indiana facility and filled out various employment-related documents, including an application form.  Claimant believed that the form was only for record-keeping purposes because he had previously worked for John.  Claimant also stated that John told him the application was “for the file” as required by state law.  Claimant was also required to take a drug test, which he did while he was still driving for TLC but after he gave them notice.  Plaintiff admitted that if he had failed the drug test he would not have been hired by D.J. Baker.

Claimant testified that he picked up the tractor, which was owned by D.J. Baker, on the same date that he filled out the application form, which was either October 12 or October 17.  According to claimant, “that was the day [I] went to work for them.”

Claimant’s primary driving route for D.J. Baker was between California and Michigan or Ohio, and took him through Illinois on each trip.  He stopped at his home en route, and was usually there with the truck twice each week.  When he was home, he usually tried to “take time off to go on to the West Coast.”  Claimant testified that he also delivered and picked up loads in Illinois, though he could not remember the number of times he did so. 

Whether at home or on the road, claimant always received his instructions regarding where to deliver and pick up loads from the Cambridge facility.  Usually, after unloading the truck he would pick up a new load in the immediate vicinity.  If there were no loads to pick up in that area, he would take the truck home empty.  In that case, he would be dispatched from his home to pick up the next load.  Claimant estimated that he received less than 25% of his assignments while he was at his home. 

Claimant usually took the truck to Cambridge for service, though on one or two occasions it had been repaired on the road.  D.J. Baker was paid by the mile, and claimant was paid a percentage of the gross. 

Evelyn Baker, owner and secretary of D.J. Baker, testified that the company’s only business location was in Cambridge, Indiana.  She was responsible for employment-related activities, such as ensuring that the employment records were complete, and setting up drug screening tests.  It was standard procedure for every driver, including claimant, to complete an application, a written driving test and a drug screening test.  Claimant completed the application and written test in Cambridge, Indiana, and took the drug screening test in Richmond, Indiana.   According to Evelyn, no driver is hired before passing the drug screening test.  When asked when she “received” claimant’s drug screening test, Evelyn replied:

“To the best of my knowledge, I think the drug screen was taken around the 19th, and then we can let them go out on a truck on the road, over the phone.  When I got the hard copy back from the doctor, I wouldn’t even know.  I would have to check to see when it was dated.”

Evelyn did not know whether her husband, John, hired claimant over the telephone, and she could neither confirm nor deny claimant’s account of his conversation with her husband.   However, she testified that claimant was not “put to work on the road” until after he passed the drug screening test.  

Previously, Evelyn’s husband worked for a different company, and she knew that claimant had worked for her husband at that time.  She also knew claimant was a qualified driver who was working for TLC, and she was not particularly concerned that he would fail the drug test or the written driver's test.  She did not know whether claimant was given a road test.  

Evelyn stated that all assignments were given by phone from Cambridge, Indiana.  Additionally, all drivers were required to call in to Cambridge every morning except Sunday.  If a driver was waiting for a load, he was occasionally required to again call Cambridge later in the day.  Evelyn agreed that in 1992 claimant probably picked up some loads in Illinois, though she did not know how many.  She estimated that, as a percentage of all loads picked up, those that were picked up in Illinois accounted for less than 10% of the total.

Evelyn knew claimant’s route took him through Illinois and that he stopped at his home twice each week.  Not all drivers were allowed to take their trucks home.  However, claimant was permitted to do so because he lived near the freeway going to and from California and lived very far from the Indiana office. According to Evelyn, "[i]t's more convenient for him and it's more convenient for us, because he is well on his way when he gets home."  

Certain employment-related paperwork was admitted into evidence.  The "date of application" on the "Driver's Application for Employment" form is either October 12 or October 17, 1992.  The date is handwritten and difficult to read.  The "Record of Road Test" is dated October 22, 1992.  The "Request for Information from Previous Employer" was signed by claimant and dated October 12, 1992.  The "Employment Eligibility Verification" form was signed by claimant and dated October 11, 1992.  It was also signed by Evelyn and dated October 22, 1992.  The "Written Examination for Drivers" form was dated October 22, 1992.  The drug screening report indicates that claimant's specimen was taken on October 19, 1992.  

The arbitrator concluded that Illinois jurisdiction was appropriate because the contract for hire was formed over the telephone while claimant was at his home in Illinois.  Additionally, the arbitrator found that there was no evidence that completion of any paperwork was a condition precedent to the formation of an employment contract and that the drug screening test was, at most, a condition subsequent.  

The arbitrator concluded that Illinois could also exercise jurisdiction because claimant's employment was principally localized in Illinois.  The arbitrator reasoned that claimant was domiciled in Illinois, had an Illinois driver’s license, and picked up and delivered loads in Illinois.  He further found that claimant spent a “substantial part of his working time in the service of his employer” while he was in Illinois and that, after the employment relationship began, claimant's contact with Indiana was limited to receiving telephone calls regarding his assignments.  

The Commission reversed, finding that the last act necessary to form a valid employment agreement was claimant's completion of the drug screening test, which occurred in Indiana.  The Commission also found that claimant did not actually "beg[i]n work" until after the drug screening test was done.  The Commission rejected the contention that claimant's employment was principally localized in Illinois.  The Commission found that there was no particular center from which claimant worked as he picked up and delivered merchandise in various states.  Additionally, claimant's source of remuneration was in Indiana, the employment contract was formed in Indiana, and claimant received his assignments from Indiana.  

The circuit court confirmed the Commission's finding that Illinois did not have jurisdiction over this matter.  However, unlike the Commission, the circuit court reasoned that   

claimant initiated a telephone call to respondent, who was in Indiana, and offered respondent his services.  Respondent accepted claimant's offer while he was in Indiana at the only location from which respondent conducted its business.  Also, according to the circuit court, claimant would not have been hired if he had not taken a driving test, filled out certain paperwork, taken a written driving test and a drug test, and each of these activities occurred in Indiana.  Thus, the circuit court concluded that the last act necessary to form a valid contract occurred in Indiana.  According to the circuit court, claimant's employment was not principally localized in Illinois because three of the five factors relevant to determining situs favored a finding that the situs of the employment relationship was in Indiana.  Finally, the circuit court noted that there was no evidence to indicate that claimant spent a substantial part of 
his working time
 in Illinois.  

ANALYSIS

Pursuant to the Act, Illinois may acquire jurisdiction over a claim (1) if the contract for hire was made in Illinois, (2) if the accident occurred in Illinois, or (3) if the claimant’s employment was principally located in Illinois.  820 ILCS 305/1(b)(2) (West 1998); 
D.J. Masonry Co. v. Industrial Comm’n
, 295 Ill. App. 3d 924, 929-30 (1998).  In the instant case, the accident occurred in Texas.  Therefore, we may exercise jurisdiction over this matter only if the contract for hire was made in Illinois or if claimant’s employment was principally located in Illinois.

I. Whether the Last Act Necessary to Form a Valid Employment Contract Occurred in Illinois or Indiana  

" '[E]mployment contracts made in Illinois are normally to be interpreted as including an agreement by the parties to be bound by the Act even when the contemplated employment is exclusively in other States.' "  
Burtis v. Industrial Comm’n
, 275 Ill. App. 3d 840, 842 (1995), quoting 
United Airlines, Inc. v. Industrial Comm’n,
 96 Ill. 2d 126, 130 (1983).  A contract for hire is made where the last act necessary for the formation of the contract occurred.  
Correct Construction Co. v. Industrial Comm’n
, 307 Ill. App. 3d 636, 640 (1999);
 Hunter Corp. v. Industrial Comm’n
, 268 Ill. App. 3d 1079, 1083 (1994).  Whether Illinois has jurisdiction over this matter " 'involves a factual inquiry as well as an application of the law' " to the facts.
  Correct Construction Co.
, 307 Ill. App. 3d at 640-41, quoting
 United Airlines, Inc.
, 96 Ill. 2d at 131-32.  

In determining whether an employment contract has been formed, it is appropriate to give consideration to principles of contract law.  See 
Board of Education v. Industrial Comm’n
, 53 Ill. 2d 167 (1972) (applying principles of mutual assent, consideration, and conditions precedent).     " 'To be valid, an acceptance must be objectively manifested, for otherwise no meeting of the minds would occur.' "  
Energy Erectors, Ltd. v. Industrial Comm’n
, 230 Ill. App. 3d 158, 162 (1992), quoting 
Rosin v. First Bank
, 126 Ill. App. 3d 230, 234 (1984).  Here, although claimant may have believed that he was hired as of his conversation with John and therefore gave notice that he would be leaving the employ of TLC, the employer-employee relationship is based on 
mutual
 assent (see 
Board of Education
, 53 Ill. 2d at 172), not the understanding of 
one
 party.  In the instant case, there is nothing in the record to suggest that either John or Evelyn was aware that claimant gave notice to TLC before he traveled to Indiana to complete routine employment procedures.  Evelyn testified that it was standard procedure for all prospective employees to fill out an application, take a written driving test, and pass a drug test, and there is nothing in the record suggesting that John intended to waive these requirements for claimant.  Moreover, both claimant and Evelyn testified that if claimant failed to pass the drug test he would not have been hired.  It is undisputed that claimant traveled to Indiana to take the drug test.  Accordingly, the last act necessary to give validity to the contract for hire was claimant's successful completion of the drug test, which occurred in Indiana.  

Claimant argues that the employment contract was formed as of his conversation with John, and that the drug test was merely a condition subsequent to contract formation.  However, even if the court accepted claimant's position, he still could not prevail.  The place of acceptance is the place of contract.  
See 9 A. Larson & L. Larson, Workers' Compensation Law §87.32(c) (1998).  See also 
Energy Erectors Ltd.,
 230 Ill. App. 3d at 162-63, citing 
United States Steel Corp., Gary Works v. Industrial Comm’n
, 161 Ill. App. 3d 437, 441 (1987).  In the instant case, it was claimant who contacted John and offered his services to D.J. Baker.  John was in Indiana when he accepted claimant's offer.  Accordingly the employment contract was formed in Indiana, not Illinois.  See 
Janzen v. Workers’ Compensation Appeals Board
, 61 Cal. App. 4th
 109, 114, 71 Cal Rptr. 260 (1997) (" 'an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance' ").  Accord 
Murray v. Ahlstrom Industrial Holdings, Inc.
, 131 N.C. App. 294, 506 S.E.2d 724 (1998); 
Gash v. Black & Veatch
, 976 S.W.2d 31 (Mo. App. 1998).  See also 
Chambers v. Industrial Comm'n
, 139 Ill. App. 3d 550, 553 (1985).

Claimant relies on 
Chicago Bridge
, 
Biggerstaff
,
 
and 
Hunter
, in support of the proposition that a contract for hire may be made over the telephone.  While we agree with that general proposition, claimant's reliance on those cases
 is misplaced as each is factually distinguishable from the case at bar.  In 
Chicago Bridge
, the employer contacted the claimant by telephone in Illinois and offered him a job in Minnesota.  
Chicago Bridge & Iron, Inc. v. Industrial Comm’n
, 248 Ill. App. 3d 687, 691 (1993).  The court concluded that even though the work site was in a different state, Illinois jurisdiction was appropriate because "a job offer was made and accepted in Illinois."  
Chicago Bridge
, 248 Ill. App. 3d at 692. 

Although the claimant in 
Chicago Bridge
 was required to fill out tax forms when he reported to the Minnesota jobsite, we nonetheless concluded that an accident occurring en route was in the course of employment.  Centra
l to our decision was the fact that claimant had worked exclusively for the same employer for 19 years.  
Chicago Bridge
, 248 Ill. App. 3d at 693.  

In 
Biggerstaff
, the evidence showed that employer’s agent, Marvin Settle, placed a telephone call from his home in Illinois to decedent’s home, which was also in Illinois.  Immediately after calling the decedent, Settle and two other men drove to a store in Illinois where they met the decedent, who accompanied them to employer’s oil rig and commenced employment without further approval from the employer.  
Biggerstaff v. Industrial Comm’n
, 171 Ill. App. 3d 845, 849-50 (1988).  Under these circumstances, we concluded that the evidence supported the Commission’s finding that a contract for hire was made in Illinois.  
Biggerstaff
, 171 Ill. App. 3d at 850.  

In 
Hunter, 
the key issue involved interpretation of a referral agreement between the Union and the employer.  
Hunter
, 268 Ill. App. 3d at 1084.  Pursuant to the referral agreement, the court concluded that the last act necessary to form an employment contract occurred when Hunter Corp., located in Indiana, called and requested employees from its agent, Local 1, located in Illinois.  We held that contract formation occurred in Illinois because the employer's ability to reject a referred Union member was restricted by the referral agreement.  
Cf.
 
Correct Construction
, 307 Ill. App. 3d at 641 (union agreement provided that employer maintained the " 'exclusive right to accept or reject persons referred for employment,' " distinguishing 
Hunter
, 268 Ill. App. 3d 1079).  

II. Whether Claimant's Employment was Principally Localized in Illinois

Claimant next contends that Illinois jurisdiction is appropriate because his employment was principally localized in Illinois.  In 
Patton v. Industrial Comm’n
, 147 Ill. App. 3d 738 (1986), the court considered the meaning of "principally localized" and determined that the legislature intended to adopt the Model Act's definition of that term.  Accordingly, " '[a] person's employment is principally localized in this or another State when (1) his employer has a place of business in this or such other State and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other State.' "  
Montgomery Tank Lines v. Industrial Comm’n
, 263 Ill. App. 3d 218, 222 (1994), quoting 4 A. Larson, Workmen's Compensation Law app. H, 629, 649-50 (Model Act) (1986).  This definition "focuses first, and foremost, upon the situs where the employment relationship is centered," and the alternative test involving domicile and working time is not to be considered unless the situs of the relationship cannot be determined.  
Montgomery Tank Lines
, 263 Ill. App. 3d at 222.  

Claimant argues that the situs of the employment relationship cannot be determined and that we should, therefore, use the alternative test involving domicile and working time.  We disagree.  The factors relevant to the determination of the situs of the employment relationship include:  "(1) where the employment relationship is centered, 
i.e
., the center from which the employee works; (2) the source of remuneration to the employee; (3) where the employment contract was formed; (4) the existence of a facility from which the employee received his assignments and is otherwise controlled; and (5) the understanding that the employee will return to that facility after the out-of-State assignment is complete."  
Montgomery Tank Lines
, 263 Ill. App. 3d at 222.  

Applying these factors to the instant case, we agree with the Commission that the situs of the employment relationship was in Indiana.  Given the nature of claimant's employment as an over-the-road truck driver, there was no fixed center from where he worked.  Thus, the first factor is not indicative of the situs of the employment relationship.  With respect to the second and third factors, claimant's source of remuneration was located in Indiana and, as previously discussed, the employment contract was formed in Indiana.  Regarding the fourth factor, claimant estimated that he received fewer than 25% of his assignments while he was at his home in Illinois.  At least 75% of his assignments were from various locations on his route between the Midwest and the West Coast.  Additionally, regardless of his location, claimant was required to call the facility in Indiana to check in and receive his assignments.  Clearly, claimant was controlled from the Indiana facility.  Finally, with respect to the fifth factor, claimant was not required to return to the Indiana facility after completing a run.  However, he usually took the truck to Indiana if it needed to be serviced.  Considering each of these factors and the evidence as a whole, we conclude that the situs of the employment relationship was in Indiana.  Because it is possible in this case to determine the situs of the employment relationship, the alternative test of domicile and working time is inapplicable.  

We recognize that claimant spent a significant amount of time in Illinois, perhaps more than he spent in any other single locale.  And while that may be a factor in determining whether his employment was principally localized in Illinois, it is not controlling.  See 
Montgomery Tank Lines
, 263 Ill. App. 3d at 222, citing 
Patton
, 147 Ill. App. 3d at 744.  Moreover, even if we were to reach the alternative test of domicile and working time, it is significant that claimant's primary purpose in returning to his home in Illinois was not to perform activities related to his employment, but to "take time off" before continuing his route.  Thus, although claimant was domiciled in Illinois, he did not spend a substantial amount of his working time in Illinois.  See also 
Patton
, 147 Ill. App. 3d at 745 (although petitioner was domiciled in Illinois that, without more, was insufficient to confer jurisdiction on Illinois). 
 
Cf. Associates Corp. of North America v. Industrial Comm'n
, 167 Ill. App. 3d 988, 994 (1988) (circumstances sufficient to establish centralized and fixed employment situs in Illinois even though employment contract was made in Indiana). 

Over-the-road truck drivers "constitute a unique class of employees whose activity, by its very nature, is transient.  The fact that a truck driver may spend a significant amount of time in one State does not detract from the essentially transitory nature of the activity in which he engages."  
Patton
, 147 Ill. App. 3d at 745.  Professor Larson's comments on this issue are also persuasive:

"The making of the contract within the state is usually deemed to create the relation within the state.  The relation, having thus achieved a situs, retains that situs until something happens that shows clearly a transference of the relation to another state.  This transfer is usually held to occur when either a new contract is made in foreign state, or the employee acquires in the foreign state a fixed and nontemporary employment situs.  The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed.

***

In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states.  An employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison.  This transference will never happen as long as the employee's presence in any state, even including the original state, is by the nature of the employment brief and transitory." 9 A. Larson & L. Larson, Workers' Compensation Law §87.42(a), (b)(1998).

For the reasons previously stated, the judgment of the circuit court is affirmed.

Affirmed. 

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.