Arthur J. **HENRIKSEN,** Appellant,

v.

**YOUNGLOVE CONSTRUCTION** and **General Casualty Companies,** **Appellees.**

No. 94–1418.

Supreme Court of Iowa.

Nov. 22, 1995.

Dennis Mahr and Leslie D. Rynell, Sioux City, for appellant.

James E. Thorn, Council Bluffs, for appellees.

TERNUS, Justice.

Appellant, Arthur J. Henriksen, was injured on a job site in Nebraska while working for his Iowa employer, Younglove Construction, appellee. The industrial commis-

sioner dismissed Henriksen's petition for Iowa workers' compensation benefits, concluding that Iowa had no jurisdiction of Henriksen's claim even though Henriksen was domiciled in Iowa. The district court upheld this determination. We think Henriksen's Iowa domicile was sufficient under Iowa Code section 85.71(1) (1989) to confer subject matter jurisdiction upon the Iowa industrial commissioner. Therefore, we reverse.

I. *Background Facts.*

Younglove Construction builds grain storage facilities and feed mills throughout the United States. Although its headquarters and only business office is in Sioux City, Iowa, it performs less than ten percent of its construction work in Iowa. In January 1989, the Sioux City office of Job Service of Iowa referred Henriksen, an Iowa resident, to Younglove for a job interview. Younglove interviewed Henriksen at its Sioux City office and hired him as a cement finisher for a project in South Sioux City, Nebraska.

In November 1989, Henriksen injured his back and neck while working on the Nebraska project. Despite his injury, he continued working until January 1990, when the project was substantially completed. Henriksen performed services for Younglove only in the State of Nebraska.

II. *Procedural History.*

Henriksen filed a petition for workers' compensation benefits in Iowa against Younglove and its workers' compensation carrier, appellee, General Casualty Companies.[1] After a hearing before a deputy industrial commissioner, the deputy denied Henriksen benefits because his claim was not compensable under the Iowa Workers' Compensation Act. *See* Iowa Code § 85.71 (1989) (specifies circumstances under which injury sustained outside Iowa will be compensated under Iowa's Workers' Compensation Act). The industrial commissioner conducted a de novo review and adopted the deputy's opinion as the final agency action. This decision was affirmed on appeal to the district court. Henriksen appealed.

---

1. Henriksen also applied for and received workers' compensation benefits in Nebraska. This fact does not preclude Henriksen's receipt of benefits under Iowa's statute. *George H. Wentz,*

*Inc. v. Sabasta,* 337 N.W.2d 495, 498 (Iowa 1983). However, any award in Iowa would be subject to a credit in the amount of the award already paid under Nebraska law. *Id.* at 498–99.

### III. *Standard of Review.*

■ Our review of the industrial commissioner's rulings is for errors of law. *Squealer Feeds v. Pickering,* 530 N.W.2d 678, 681 (Iowa 1995). The proper interpretation of the workers' compensation statute is a question of law for this court. *Aluminum Co. v. Quinones,* 522 N.W.2d 63, 65 (Iowa 1994).

### IV. *Does the Industrial Commissioner Have Subject Matter Jurisdiction of Henriksen's Claim?*

The compensability of an injury occurring outside the territorial limits of Iowa is governed by Iowa Code section 85.71:

> If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee . . . would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee . . . shall be entitled to the benefits provided by this chapter, *provided that at the time of such injury:*
>
> 1. *The employment is principally localized in this state, that is,* the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or *if the employee is domiciled in this state,* or
>
> 2. The employee is working under a contract of hire made in this state in employment not principally localized in any state, or
>
> 3. The employee is working under a contract of hire made in this state in employment principally localized in another state, whose workers' compensation law is not applicable to the employee's employer, or
>
> 4. The employee is working under a contract of hire made in this state for employment outside the United States.

Iowa Code § 85.71 (1989). The circumstances of an employee's injury must fall within one of these categories for an out-of-state injury to be compensable. *George H.*

*Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 500 (Iowa 1983).

■ Henriksen argues that Iowa has subject matter jurisdiction of his claim under section 85.71(1) based solely upon his domicile in Iowa. Thus, we must decide whether section 85.71(1) permits the receipt of Iowa workers' compensation benefits for an out-of-state injury based only upon the claimant's Iowa domicile.[2]

A. *Adoption of section 85.71.* The Federal Occupational Safety and Health Act of 1970 authorized a national commission to study the adequacy of state workers' compensation laws. 29 U.S.C. § 676 (1970). In 1972, this commission issued a report containing eighty-two recommendations. *Report of the Nat'l Comm'n on State Workmen's Compensation Laws* 126–27 (1972). The commission called upon states to meet nineteen of the "essential" recommendations by July 1, 1975. *Id.* One of these recommendations was that an employee have a choice of where to file a workers' compensation claim:

> We recommend that an employee or his survivor be given the choice of filing a workmen's compensation claim in the State where the injury or death occurred, or where the employment was principally localized, or where the employee was hired.

*Id.* R2.11.

In 1973 and 1974, Iowa amended its workers' compensation laws in response to the commission's recommendations. Harry W. Dahl, *The Iowa Workmen's Compensation Law & Federal Recommendations,* 24 Drake L.Rev. 336, 336 (1975). Included in these amendments was section 85.71, a provision for extraterritorial coverage of Iowa's workers' compensation statute. *Id.* at 351–52; *see* 1973 Iowa Acts ch. 144, § 29.

We have observed in prior cases that section 85.71 was based upon section 7 of the model Comprehensive Workmen's Compensation and Rehabilitation Law drafted by the Council of State Governments. *Wentz,* 337 N.W.2d at 500; *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 533 (Iowa 1981).

---

**2.** Henriksen also argues that his claim is covered by section 85.71(2). We need not consider this argument, however, because we conclude that jurisdiction of Henriksen's claim is conferred by section 85.71(1).

The model act defines principally localized employment:

> A person's employment is principally localized in this or another state when (1) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

*Council of State Governments Model Act, Comprehensive Workmen's Compensation & Rehabilitation Law* § 7(d)(4) (1963) (hereinafter "model act"). Thus, a worker's employment is "principally localized" in a particular state under the model act under two distinct sets of circumstances: (1) the employer has a place of business in the state and the employee regularly works at or from that place of business; or (2) the employee is domiciled in the state and spends a substantial part of his working time in that state.

At this point, it is helpful to recall the precise language of the Iowa statute focusing on employment principally localized in Iowa:

> 1. The employment is principally localized in this state, that is, the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or if the employee is domiciled in this state....

*Iowa Code* § 85.71(1) (1989). It is apparent that the Iowa legislature adopted some, but not all, of the language suggested in the model act. Harry W. Dahl, *The Model Iowa Workers' Compensation Act—Time For Change*, 30 Drake L.Rev. 693, 723 (1980) (hereinafter "1980 Dahl Article"). Like the model act, the Iowa statute applies to out-of-state injuries where the employer has a place of business in Iowa or some other state[3] and the employee regularly works in Iowa. However, with respect to the second alternative, the Iowa statute omits the requirement that the employee "spends a substantial part of his working time in the service of his employer in this or such other state" and merely requires Iowa domicile.

Mr. Dahl, a former Iowa industrial commissioner, discusses this discrepancy between the Iowa act and the model act in his 1980 article:

> Because the Iowa legislature did not use all of the language of the Council of State Governments draft, there arose an aberration which resulted in a rule that domicile of the employee in Iowa was alone sufficient to entitle him to benefits under the Iowa Workers' Compensation Act. The purpose of the [model act] was to avoid any employee "falling between the cracks" by not being covered under the law of any state. However, the Iowa amendment went further than that, and now is used as a supplemental source of workers' compensation benefits because Iowa benefits are greater than those in neighboring states.
>
> ....
>
> Neither the National Commission nor the Council of State Governments contended that domicile in a state alone was sufficient to give jurisdiction; there had to be domicile plus a substantial part of working time in the state. The Iowa General Assembly left out that part of the Council of State Governments draft which defines "principally localized" in the alternative as domicile plus a substantial part of working time in the State of Iowa. *This may mean*

---

3. The words "or some other state" may have been inadvertently left in the Iowa statute from the model act. The model act defines the term "principally localized *in this or another state*" for purposes of determining in which state, if any, the claimant's employment *is* localized. Model Act § 7(d)(4) (emphasis added). Such a general definition is appropriate because the model act refers to "employment principally localized in this state" in section 7(a)(1) and "employment principally localized in another state" in section 7(a)(3). The Iowa statute uses comparable language: "employment ... principally localized in this state" and "employment principal-

ly localized in another state." *Iowa Code* §§ 85.71(1), .71(3) (1989). However, the Iowa statute incorporated an altered version of the model definition to define *only* "principally localized *in this state*." *Id.* § 85.71(1) (emphasis added). To make the Iowa definition consistent with the more narrow term it defined, the words "or some other state" should probably have been omitted from the Iowa definition of "principally localized." In any event, we need not decide in this case whether the failure to remove these words from the model definition in drafting the Iowa statute was intentional or a mere oversight.

*that "domicile" (or residence) is what the legislature intended.*

1980 Dahl Article, 30 Drake L.Rev. at 723 (emphasis added). Prior to any Iowa cases interpreting section 85.71(1), our industrial commissioner ruled that domicile independently conferred subject matter jurisdiction. E.J. Kelly, *Comments on Iowa Beef Processors, Inc. v. Miller—Extraterritorial Employment Injuries & Subject Matter Jurisdiction Under Section 85.71(1)*, 32 Drake L.Rev. 145, 146 & n. 9 (1983) (*"relying on what was considered to be the clear wording of the statute,* and in the absence of any judicial precedent, the commissioner concluded that the claimant's domicile in Iowa was sufficient to invoke Iowa jurisdiction") (emphasis added); *see, e.g., Miller,* 312 N.W.2d at 531; *Wentz,* 337 N.W.2d at 497.

B. *Prior interpretations of section 85.71.* In *Miller,* we held the employee's Iowa domicile was not sufficient to satisfy the "principally localized" test. *Miller,* 312 N.W.2d at 534. Despite the obvious difference between section 85.71(1) and the model act, we concluded "the legislative intent underlying the enactment of section 85.71(1) requires an interpretation that is consistent with the model act." *Id.* Consequently, we construed the "principally localized" provision in the Iowa statute to require a meaningful relationship between the employee's domicile in Iowa and the employment relationship. *Id.* at 533.

In *Wentz,* we strengthened the consistency between the model act definition and the Iowa statute by requiring the employee to meet the model act definition as a "threshold" to recovery under the Iowa act. *Wentz,* 337 N.W.2d at 501. Thus, as our case law currently stands, we have read into the statute the exact language from the model act that the legislature omitted when it enacted section 85.71.

C. *Proper interpretation of section 85.71(1).* In both *Miller* and *Wentz,* our court recognized the guiding principles of statutory construction. We said in *Miller,*

[T]he legislature may be its own lexicographer, and ... we are bound to follow its definitions [citation omitted], and may not add words or change terms under the guise of judicial construction.

*Miller,* 312 N.W.2d at 533. Focusing more specifically on the interpretation of workers' compensation statutes, we noted in *Wentz,*

Extraterritorial operation of workers' compensation statutes is an area of considerable variation. Application of any particular state's workers' compensation act to injuries suffered outside the state is dependent on the language and policy of its statutes. Although we apply our statute broadly, we nonetheless are bound by its requirements.

*Wentz,* 337 N.W.2d at 499 (citations omitted). Today, we respectfully disagree with *Miller* and *Wentz* 's application of these principles to section 85.71.

■ When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute or resort to rules of construction. *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994). Section 85.71 defines "principally localized" to mean either (1) the employer has a place of business in Iowa and the employee regularly works in Iowa, "or" (2) "the employee is domiciled in this state." The statute includes no Iowa work requirement in the second alternative even though such a requirement could easily have been included and was, in fact, part of the model act.

Section 85.71 on its face clearly permits domicile as an independent basis for subject matter jurisdiction. The *Miller* court rejected this interpretation, however, relying upon its perception of legislative intent and rules of statutory construction. It reasoned that (1) "[d]efining employment that 'is principally localized in this state' to allow benefits to be based exclusively upon the domicile of the employee ... would, in our opinion, be arbitrary"; (2) "[i]f the legislature ... intended to provide Iowa workers' compensation benefits to employees who sustain injuries outside the state exclusively on the basis of domicile in this state, we do not believe that it would have utilized the 'employment is principally localized in this state' language in the enacting clause"; and (3) "the legislative intent underlying the enactment of section 85.71(1) requires an interpretation that is consistent

with the model act." *Miller*, 312 N.W.2d at 533–34. We find *Miller's* analysis unsupportable.[4]

As we have pointed out, *Miller* concluded that basing jurisdiction exclusively on domicile would be "arbitrary." *Miller*, 312 N.W.2d at 533. However, the Restatement (Second) of Conflicts recognizes that "the state of the employee's domicile may, on the basis of domicile alone, award relief under its workmen's compensation statute." Restatement (Second) of Conflicts § 181 cmt. a (1971). Moreover, a state does have a legitimate interest in assuring that persons domiciled in the state are adequately compensated:

> The place where the employee or his dependents reside also has an interest of specific relevance to compensation law; for if the employee is left uncompensated or undercompensated, it is his local community that will have to bear the expense of direct assistance and relief.

4 Arthur Larson, *The Law of Workmen's Compensation* § 86.34, at 16–60 (1994); *accord Crider v. Zurich Ins. Co.*, 380 U.S. 39, 41, 85 S.Ct. 769, 770, 13 L.Ed.2d 641, 643 (1965) ("The state where the employee lives has perhaps even a larger concern, for it is there that he is expected to return; and it is on his community that the impact of the injury is apt to be most keenly felt."); *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028, 1035 (1947) (recognizing that a state has a legitimate interest in providing workers' compensation benefits to its residents when they sustain an out-of-state injury); *Dissell v. Trans World Airlines*, 511 A.2d 441, 442 (Me.), *cert. denied*, 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 382 (1986) (holding that employee's residency in Maine alone gave rise to a "legitimate and substantial interest" such that Maine had jurisdiction of the employee's out-of-state injury under its workers' compensation statute). Indeed, the Iowa legislature may have thought that all Iowa residents were entitled to the level of workers' compensation benefits established under the Iowa act, even though some of these Iowa residents commute across the Mississippi River or the Missouri River to work for an out-of-state employer.[5]

Thus, there is simply no basis for *Miller's* conclusion that supporting jurisdiction on domicile alone is arbitrary. *See Dissell*, 511 A.2d at 444 (Maine's interest in ensuring that its residents are adequately compensated "precludes any contention that application of Maine law to [the employee's] injury is arbitrary"). So long as Iowa has personal jurisdiction of the employer,[6] the reach of its workers' compensation statute to Iowa domiciliaries is reasonable.

*Miller* also concluded that the definitional clause "or if he is domiciled in this state" must be construed in conjunction with the enacting clause "employment [that] is principally localized in this state." *Miller*, 312 N.W.2d at 533. The court stated, "Domicile alone is inapposite to whether an employee's 'employment is principally localized in this state.'" and "Iowa domicile cannot rationally be equated with employment principally localized in Iowa." *Id.*

These conclusions ignore the principle recognized in *Miller* that the legislature is its own lexicographer: it may define the words it uses. In section 85.71(1) the legislature defined the term "principally localized" to mean domicile alone. The court cannot under the guise of statutory construction apply a definition it finds more to its liking. Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533 (1947) ("A judge must not rewrite a statute, neither to enlarge nor contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation."); *cf. Spurbeck v. Statton*, 252 Iowa 279, 284, 106

---

4. We do not separately discuss the analysis used in *Wentz* because that court merely followed *Miller*: "our decision in [*Miller*] renders erroneous the commissioner and district court findings of jurisdiction based solely on claimant's domicile." *Wentz*, 337 N.W.2d at 501.

5. Four of Iowa's largest cities, Council Bluffs, Sioux City, Davenport and Dubuque, are on the border of Iowa and its neighboring states.

6. Younglove does not challenge the industrial commissioner's exercise of personal jurisdiction.

N.W.2d 660, 663 (1960) (in considering the constitutionality of a statute, "the courts have no concern with the wisdom, justice, policy or expediency of a statute, and are not responsible for the presence or absence of those elements in an Act of the legislature").

Our final conclusion in *Miller* was that legislative intent required us to interpret section 85.71(1) consistently with the model act; therefore, mere domicile could not support subject matter jurisdiction of an out-of-state injury because the model act required something more. *Miller*, 312 N.W.2d at 534. Although we relied on legislative intent in *Miller* to reach this conclusion, there is no legislative history which reveals the General Assembly's intent in enacting section 85.71(1). Therefore, legislative intent must be discerned from the words used by the legislature: "we are bound by what the legislature said, not by what it should or might have said." *Krull*, 522 N.W.2d at 612; *accord State v. Jones*, 464 N.W.2d 241, 242 (Iowa 1990). The words used by the legislature in section 85.71(1) vary considerably from the language of the model act. Consequently, the conclusion announced in *Miller* that section 85.71(1) should be interpreted consistently with the model act cannot be supported by legislative intent.

As the United States Supreme Court has stated,

It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.

*Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917); *accord State v. Burgs*, 479 N.W.2d 323, 324 (Iowa 1992) ("When a statute's terms are unambiguous and its meaning plain, there is no room for second-guessing legislative intent."). We must enforce section 85.71(1) as it is plainly written.[7] We failed to do so in *Miller* and *Wentz*; consequently, our interpretation of section 85.71(1) in those cases is clearly erroneous. Therefore, we have no alternative but to overrule them. *Young v. City of Des Moines*, 262 N.W.2d 612, 615 (Iowa 1978), *overruled on other grounds, Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989) (stare decisis does not prevent us from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest); *Kersten Co. v. Department of Social Servs.*, 207 N.W.2d 117, 121 (Iowa 1973) (stare decisis "should not be invoked to maintain a clearly erroneous result"); *State v. Johnson*, 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965) (we have a duty to change erroneous past decisions); *Stuart v. Pilgrim*, 247 Iowa 709, 714, 74 N.W.2d 212, 216 (1956) (overruling established precedent that "proceed[ed] upon a wrong principle, [was] built upon a false premise, and arriv[ed] at an erroneous conclusion"); *accord People v. Anderson*, 742 P.2d 1306, 1331 (Cal.1987) (stare decisis does not shield court-created error from correction, especially where error is related to a matter of continuing concern to the community). As we noted in *Kersten*, "we should be as willing to correct our own

---

7. Younglove does not contend a literal application of the statute gives rise to constitutional concerns. We note that an award of benefits under Iowa's workers' compensation law would not violate the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution nor the Due Process Clause of the Fourteenth Amendment as long as Iowa has a significant interest in applying its statute to Henriksen's claim. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521, 531 (1981); *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 286, 100 S.Ct. 2647, 2663, 65 L.Ed.2d 757, 776 (1980); *Priestman v. Canadian P. Ltd.*, 782 F.Supp. 681, 686 (D.Me. 1992); *Christiansen v. Elwin G. Smith, Inc.*, 598 A.2d 176, 177 (Me.1991) (residency of injured employee in Maine gave Maine a sufficient state interest in the subject matter of the employee's claim for workers' compensation benefits so as to satisfy due process); *LeBlanc v. United Eng'rs & Constructors*, 584 A.2d 675, 677–78 (Me.1991) (same re full faith and credit); *Dissell*, 511 A.2d at 444–45; *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292, 305 n. 13 (1987); 4 Arthur Larson, *The Law on Workmen's Compensation* § 86.00, at 16–48 (1994); *see also Garcia v. American Airlines, Inc.*, 12 F.3d 308, 310 (1st Cir.1993) (more than one state's workers' compensation law may apply to an injury if both states have a valid interest in the case).

mistakes as we are those of others." *Kersten,* 207 N.W.2d at 121.

We hold that Henriksen's employment was "principally localized" in Iowa as that phrase has been defined by the legislature. Henriksen was domiciled in Iowa and therefore, the Iowa industrial commissioner has subject matter jurisdiction of Henriksen's claim.

V. *Summary.*

Iowa's Workers' Compensation Act applies to Henriksen's out-of-state injury. Therefore, we reverse the district court's decision upholding the industrial commissioner's dismissal of Henriksen's petition for workers' compensation benefits and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except HARRIS, J., who dissents without opinion.