HEARTLAND EXPRESS, Appellant,

v.

James GARDNER, Jr., Appellee.

No. 02–0993.

Supreme Court of Iowa.

Dec. 17, 2003.

As Amended on Denial of Rehearing
Feb. 27, 2004.

Stephen W. Spencer and Joseph M. Barron of Peddicord, Wharton, Spencer & Hook, P.C., Des Moines, for appellant.

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

CADY, Justice.

In this appeal, we must decide whether the workers' compensation commissioner had subject matter jurisdiction over an employee's claim for benefits. If the commissioner had jurisdiction over the claim, we must further consider whether a new hearing date should have been granted and whether the commissioner's determination as to the employee's industrial disability was supported by substantial evidence. Ultimately, we do not reach these latter issues because we find the first issue—relating to subject matter jurisdiction—dispositive.

## I. Background Facts and Proceedings.

James Gardner (Gardner), a Georgia resident, was an over-the-road truck driver for Heartland Express, Inc., (Heartland), an Iowa corporation. Gardner's employment included leasing his tractor and providing driving and delivery services to Heartland for the transport of goods. Gardner entered into a contractual relationship with Heartland in Coralville, Iowa, where Heartland maintains its corporate offices.[1] His pre-employment physical, new employee orientation, and initial equipment inspections each occurred in Iowa. During his employment with Heartland, Gardner was largely managed from Iowa. He received his work assignments and paychecks from the Iowa offices, and any other paperwork related to his em-

---

1. There is no additional evidence related to the location at which Gardner entered into his contract for hire. Moreover, the parties do not dispute that the contract for hire was entered into in Iowa. *See Heartland Express, Inc. v. Terry,* 631 N.W.2d 260, 265–66, 270–71 (Iowa 2001) (avoiding the same core jurisdictional question raised in this appeal based on the determination that the employee's contract for hire was not entered into in Iowa).

ployment was apparently sent to or from Iowa. However, Gardner's actual transportation work for Heartland took him to approximately forty states—including Georgia and Iowa—and he spent no more or less time in any one state.

On February 16, 1994, Gardner sustained an injury to his back while attempting to adjust a pin in one of the axle areas of his tractor-trailer at a delivery location in Georgia. Gardner completed his route and then notified Heartland of the injury. He was eventually referred to an occupational medicine specialist, Domenic Esposito, M.D. Dr. Esposito diagnosed Gardner's injury as a "large ruptured disc" in his spine. He recommended Gardner undergo a specific corrective surgery.

Gardner requested and received permission from Heartland to get a second opinion from another physician, Alfred Bonati, M.D. Dr. Bonati recommended a different surgery that he believed would hasten Gardner's healing time. He performed two surgeries on Gardner's back in July 1994. After the surgeries, Gardner began experiencing lower extremity pain, which he had not experienced before.[2] The combined effect of his back injury, back surgery, and lower extremity pain kept Gardner from returning to work. He was soon forced to sell his tractor due to his inability to make payments on it.

Sometime during this period, Heartland transferred Gardner's care to another physician, Charles Wingo, M.D. Dr. Wingo suggested further surgery, and yet another physician, Gary Lowery, M.D., confirmed his diagnosis. Dr. Lowery performed two more surgeries on Gardner's back. On December 11, 1996, it was determined that Gardner had reached his maximum medical improvement. Except for limited employment at his father's convenience store, Gardner had not worked for almost three years.

In July 1997, Gardner underwent a functional capacity evaluation to determine whether he would be able to return to work full time. Although the evaluation revealed that Gardner could work up to eight hours a day and was "highly motivated to return to work," it also indicated that he might be unable to meet all of the physical requirements of the truck driving profession. Not surprisingly, when Gardner attempted to return to trucking full time, he was prevented from doing so by his inability to sit comfortably for long periods of time or lift heavy objects. He held several trucking jobs for short periods of time, but could not establish employment similar to that which he had held with Heartland.

On February 8, 1999, Gardner filed for workers' compensation benefits with the Iowa workers' compensation commissioner (commissioner). A hearing was held before a deputy workers' compensation commissioner in November 2000. During the course of the hearing, Heartland challenged the commissioner's subject matter jurisdiction over Gardner's claim for benefits. To resolve the issue, the deputy commissioner looked to the statutory extension of jurisdiction in effect at the time of Gardner's injury and determined that subject matter jurisdiction existed. The deputy commissioner went on to decide that Gardner was entitled to three hundred seventy-

---

**2.** Heartland later referred Gardner's medical case file to another physician, Gerald Smolensky, M.D., for an evaluation of whether a cause of action might exist against Dr. Bonati based on his treatment of Gardner. Dr. Smolensky opined that the surgery conducted by Dr. Bonati may have been inappropriate but the treatment was not negligent or below the standard of care. He also believed that Gardner likely would have benefited from the surgery suggested by Dr. Esposito.

five weeks of permanent partial disability and additional healing period benefits.

Heartland's subsequent motion for rehearing was granted. The deputy commissioner later issued an amended and substituted decision that reached the same result pertaining to benefits. Heartland then appealed the deputy commissioner's decision to the workers' compensation commissioner. The commissioner affirmed the decision of the deputy commissioner, noting that subject matter jurisdiction existed at the time of Gardner's injury and continued to exist. Heartland then sought and was granted judicial review of the commissioner's decision. The district court affirmed the commissioner's decision, also finding that the subject matter jurisdiction statute in effect at the time of Gardner's injury continued to apply to his claim. Heartland appeals from the district court's ruling on judicial review.

## II. Standards of Review.

■■■ We typically review a district court's decision on judicial review for correction of errors at law. *Greenwood Manor v. Iowa Dep't of Pub. Health, State Health Facilities Council,* 641 N.W.2d 823, 830 (Iowa 2002). This standard dovetails with our review of jurisdictional questions, which is also for correction of errors at law. *In re Marriage of Engler,* 532 N.W.2d 747, 748 (Iowa 1995). "Thus, our review is limited to whether the district court correctly applied the law." *Greenwood Manor,* 641 N.W.2d at 830.

■■■ In construing a statute, "[w]e focus on the intent of the legislature ... looking first and foremost to the language it chose in creating the act" to determine its intent. *In re Detention of Swanson,* 668 N.W.2d 570, 574 (Iowa 2003). "We

read the statute 'as a whole and give it "its plain and obvious meaning, a sensible and logical construction," ' which does not create an 'impractical or absurd result." ' *Id.* (citation omitted). If necessary, we may also " 'look to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage' to aid our interpretation." *Id.* at 574–75 (citation omitted). Our review of a district court's construction of a statute is also for correction of errors at law. *Id.* at 575.

## III. Subject Matter Jurisdiction and Extraterritorial Injuries.

### 1. Background and Underlying Principles.

■■■ Subject matter jurisdiction " 'is the power to hear and determine cases of the general class to which the proceedings belong.' " *Shirley v. Pothast,* 508 N.W.2d 712, 714 (Iowa 1993) (citation omitted). Through its adoption of Iowa Code chapter 85, "the legislature removed from the district court's general, original jurisdiction, the power to hear claims involving the 'rights and remedies of an injured employee against an employer for industrial injuries' and placed them within the exclusive jurisdictional purview of the [commissioner]." *Id.* at 715 (citation omitted). Thus, subject matter jurisdiction over workers' compensation claims is vested in the commissioner subject to any further circumscription by the legislature. *See id.* at 714–15.

One example of such circumscription is Iowa Code section 85.71, which "governs the [commissioner's] subject matter jurisdiction over workers' compensation claims based on injuries sustained outside the state." [3] *Heartland Express, Inc. v. Ter-*

---

**3.** Gardner argues that Iowa Code section 85.71 relates to the authority of the workers' compensation commissioner over a matter at hand rather than to its subject matter jurisdic-

*ry*, 631 N.W.2d 260, 265 (Iowa 2001); *see also George H. Wentz, Inc. v. Sabasta*, 337 N.W.2d 495, 500 (Iowa 1983) ("The purpose of Iowa Code section 85.71 is to identify those employees who are entitled to benefits under the Iowa act despite occurrence of an injury out of state."). Prior to the adoption of section 85.71, workers' compensation claimants who had been hired in Iowa could file for benefits in Iowa even if they were injured outside of Iowa. *See* Harry W. Dahl, *The Iowa Workmen's Compensation Law and Federal Recommendations*, 24 Drake L.Rev. 336, 351–52 (1975) (citing *Haverly v. Union Constr. Co.*, 236 Iowa 278, 284–90, 18 N.W.2d 629, 633–36 (1945)). However, while Iowa jurisdiction could be invoked based on the sole factor of hiring, many other states' laws were more restrictive in extending jurisdiction over a claimant's claim for benefits arising from an "extraterritorial" injury. *See* The Council of State Governments, *Workmen's Compensation & Rehabilitation Law* § 7 cmt. at 97–98 (1973) [hereinafter Model Act]. For this reason, some workers' compensation claimants injured outside of the territorial limits of their "home" state found themselves unable to bring a claim for benefits in any state. *See id.*

This inequitable result moved the National Commission on State Workmen's Compensation Laws to recommend "that an employee or his survivor be given the choice of filing a workmen's compensation claim in the State where the injury or death occurred, or where the employment was principally localized, or where the employee was hired." *The Report of the Nat'l Comm'n on State Workmen's Compensation Laws* R2.11, at 48 (1972). Not long after this recommendation was made, the Council of State Governments proposed a model workers' compensation statutory provision "to ensure that [the] tragedy of complete failure of coverage cannot possibly take place." Model Act § 7 cmt. at 98. This provision provided for extraterritorial jurisdiction as long as one of four jurisdictional prerequisites was satisfied:

> [A]n employee suffering an out-of-state injury may recover under this act if his employment is principally localized in this state, or he is working under a contract for hire made in this state in employment not principally localized in

---

tion. We have wrestled with applying our definitions and rules pertaining to these two concepts in many other contexts. *See State v. Emery*, 636 N.W.2d 116, 119–20 (Iowa 2001); *In re Marriage of Engler*, 532 N.W.2d 747, 748–49 (Iowa 1995); *State v. Mandicino*, 509 N.W.2d 481, 482–83 (Iowa 1993). However, section 85.71 has previously been interpreted to be a subject matter jurisdiction statute, and we find no reason to diverge from that determination. *Heartland Express, Inc.*, 631 N.W.2d at 265 ("Iowa Code section 85.71 is a subject matter jurisdiction statute."); *accord Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 256–61 (Iowa 1995); *George H. Wentz, Inc. v. Sabasta*, 337 N.W.2d 495, 498 (Iowa 1983); *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530, 532–34 (Iowa 1981); *Christian v. Hirschbach Motor Lines, Inc.*, 496 N.W.2d 270, 273–74 (Iowa App.Ct.1992); *see also Ex Parte Fluor Contractors Int'l*, 772 So.2d 1157, 1159–60 (Ala. 2000) (considering the effect of the state's extraterritorial injury statute on subject matter jurisdiction); *Sims v. Leland Roberts Constr., Inc.*, 671 So.2d 106, 107–09 (Ala.Civ.App.1995) (same); *Patton v. Indus. Comm'n*, 147 Ill.App.3d 738, 101 Ill. Dec. 215, 498 N.E.2d 539, 544 (1986) (same); *Haney v. Butler*, 990 S.W.2d 611, 616–18 (Ky. 1999) (same); *Miller v. S.W. Rodgers*, 634 So.2d 1377, 1377–78 (La.Ct.App.1994) (same); *Cherokee Lines, Inc. v. Bailey*, 859 P.2d 1106, 1110–11 (Okla.1993) (same); *Matthews v. St. Paul Prop. & Liab. Ins.*, 845 S.W.2d 737, 738–39 (Tenn.1992) (same). *See generally* 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ch. 143 (2002) [hereinafter Larson] (discussing various jurisdictional and conflict of laws questions related to the application of state workers' compensation statutes for both in-state and extraterritorial injuries).

any state or he is working under a contract of hire made in this state in employment principally localized in another state whose workmen's compensation law is not applicable to his employer or he is working under a contract of hire made in this state for employment outside the United States or Canada.

*Id.*

Although Iowa jurisdiction previously had been interpreted broadly, our legislature chose to add the Council of State Governments' model language in 1973. 1973 Iowa Acts ch. 144, § 29; *see also George H. Wentz, Inc.*, 337 N.W.2d at 500 ("Iowa Code section 85.71 is based on language found in section 7 of the [Model Act]."). In doing so, the legislature incorporated only a portion of the Model Act's definition of the term "principally localized." *See* 1973 Iowa Acts ch. 144, § 29. The Model Act definition of "principally localized" provided:

> A person's employment is principally localized in this or another state when (1) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state[.]

Model Act § 7(d)(4). The legislature defined "principally localized" as requiring that "[the employee's] employer has a place of business in this or some other state and [the employee] regularly works in this state, or if [the employee] is domiciled in this state." 1973 Iowa Acts ch. 144, § 29. Importantly, the legislature chose not to include in this definition the further model language under the second (domicile) clause that permitted an employee to establish principal localization—and thus jurisdiction—if he could show he was domiciled in the state *and* spent "a substantial part of his working time in the service of his employer in this or such other state." Model Act § 7(d)(4).

The main controversy in this appeal arises as a result of a 1997 amendment to section 85.71. *See* 1997 Iowa Acts ch. 106, § 1. This amendment came shortly after our decision in *Henriksen v. Younglove Construction*, 540 N.W.2d 254 (Iowa 1995). In *Henriksen*, we reconsidered our prior interpretations of section 85.71(1), in which we had determined that that subsection required "a meaningful relationship between the employee's domicile in Iowa and the employment relationship" to establish subject matter jurisdiction in Iowa. *Id.* at 258; *see also George H. Wentz, Inc.*, 337 N.W.2d at 500–02; *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530, 533–34 (Iowa 1981). After looking to the plain language of the statute and noting the legislature's failure to include the Model Act language requiring a more extensive relationship, we concluded, "[s]ection 85.71 on its face clearly permits domicile as an independent basis for subject matter jurisdiction." *Henriksen*, 540 N.W.2d at 258.

Not long after this decision, the legislature amended section 85.71:

> Section 1. Section 85.71, Code 1997, is amended to read as follows:
>
> 85.71 ~~EMPLOYMENT~~ *INJURY* OUTSIDE OF STATE.
>
> If any employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee . . . would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee . . . shall be entitled to the benefits provided by this chapter, ~~provided that~~ *if* at the time of such injury *any of the following is applicable:*

1. The employment is principally localized in this state, that is, the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or if *the employee's employer has a place of business in this state and* the employee is domiciled in this state ~, or~.

2. The employee is working under a contract of hire made in this state in employment not principally localized in any state~, or~ *and the employee spends a substantial part of the employee's working time working for the employer in this state.*

3. The employee is working under a contract of hire made in this state in employment principally localized in another state, whose workers' compensation law is not applicable to the employee's employer~, or~.

4. The employee is working under a contract of hire made in this state for employment outside the United States.

. . .

Approved May 2, 1997 [ (effective July 1, 1997) ]

1997 Iowa Acts ch. 106, § 1; *see also* Iowa Code § 3.7(1) (1999) (providing the effective date for legislation that does not otherwise specify an effective date). Although this amendment had clear ramifications for the application of subsection (1), the legislature's addition of language to subsection (2) also substantially altered the required prerequisites for subject matter jurisdiction under that subsection. In fact, it is the effect of the amendment to subsection (2) that is directly at issue in this case.

Gardner characterizes the main controversy in this appeal as involving a question of retroactive application of Iowa Code section 85.71(2). He argues that the pre-amendment form of section 85.71(2) applies to his claim for workers' compensation benefits given it was in effect at the time he was injured in 1994. As a corollary to this argument, Gardner asserts that the commissioner properly found that it had subject matter jurisdiction over his claim under subsection (2) of the statute because his contract for hire was made in Iowa and his employment was "not principally localized in any state." *See* Iowa Code § 85.71(2) (1993).

Heartland contends that the post-amendment form of section 85.71(2) applies because the amendment should be applied prospectively, not retrospectively. *See* Iowa Code § 85.71(2) (1999). It further argues that Gardner seeks to create a question of retroactive applicability where none exists. Instead, Heartland points to the timing of the filing of Gardner's petition for Iowa workers' compensation benefits, which, it points out, came over eighteen months *after* the statutory amendment became effective. Based on this timing, Heartland argues the post-amendment statute applies due to the fundamental prerequisite that subject matter jurisdiction exist before a tribunal takes any action in a particular case.

Ultimately, the claims asserted by the parties require us to consider two interrelated issues pertaining to the commissioner's subject matter jurisdiction. First, we must decide which version of section 85.71(2) applies to Gardner's cause of action: the pre-amendment version that existed at the time of his injury or the post-amendment version that existed at the time his petition for workers' compensation benefits was filed. Second, we must determine whether Gardner's claim for benefits falls within the commissioner's jurisdiction under the appropriate version of section 85.71(2).

## 2. Which Version of Section 85.71(2) Applies?

Several fundamental principles related to subject matter jurisdiction guide

our determination of the first issue. We launch from the premise that "jurisdiction [must] be established as a threshold matter," a requirement that " 'spring[s]' from the nature and limits of the judicial power' ... and is 'inflexible and without exception.' " *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210, 227 (1998). For this reason, a court without subject matter jurisdiction over a particular area " 'cannot proceed at all in any cause.' " *Id.* at 94, 118 S.Ct. at 1012, 140 L.Ed.2d at 227 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264, 265 (1869)). The fundamental nature of subject matter jurisdiction makes the issue "an abstract inquiry *unrelated and precedent to* the rights of the parties to a particular case." *In re Guardianship of Matejski*, 419 N.W.2d 576, 579 (Iowa 1988) (emphasis added).

▮ Courts have long recognized that " 'the jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought.' " *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118, 127–28 (1993) (collecting cases and quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154, 155 (1824)); *Powell v. Khodari–Intergreen Co.*, 303 N.W.2d 171, 172 (Iowa 1981); *see also Minneapolis & St. Louis R.R. v. Peoria & Pekin Union Ry.*, 270 U.S. 580, 586, 46 S.Ct. 402, 405, 70 L.Ed. 743, 746 (1926); *Anderson v. Watt*, 138 U.S. 694, 702–03, 11 S.Ct. 449, 451, 34 L.Ed. 1078, 1081 (1891); *Secrest v. Simonet*, 708 P.2d 803, 807 (Colo.1985); *Davis v. Davis*, 799 S.W.2d 127, 131 (Mo.Ct.App. 1990); *Travelers Indem. Co. v. Montelongo*, 785 S.W.2d 436, 438 (Texas Ct.App. 1990). Although this principle is often applied in light of the parties' status—most often in light of their domicile or a change in that domicile—this "state of things" also includes and requires an application of the jurisdictional law *at the time the suit is filed*. *See In re Lewis*, 45 B.R. 27, 30 (Bankr.W.D.Mo.1984); *In re Quinn*, 44 B.R. 622, 625 (Bankr.W.D.Mo.1984); *Guy v. Am. Fed'n of Gov't Employees*, No. 71 (No. 2501), 1987 WL 5168, at *5 (Tenn.Ct. App. Jan. 9, 1987). Ultimately, because subject matter jurisdiction goes to the core of the judicial power, it must exist in light of the law pertaining to subject matter jurisdiction at the time that judicial power is exercised. *See Steel Co.*, 523 U.S. at 94, 118 S.Ct. at 1012, 140 L.Ed.2d at 227.

▮ Gardner contends the commissioner correctly invoked the subject matter jurisdiction statute in place at the time of his injury. Yet, at the time of his injury, the commissioner had not been asked to exercise its judicial authority. Only at the time he filed his claim—which was after the amendment to section 85.71(2)—was the commissioner called upon to exercise its authority. It was at that point that the commissioner was required to look inward to determine whether subject matter jurisdiction existed under the law related to its jurisdiction as it stood at that time. *See Bailey v. Batchelder*, 576 N.W.2d 334, 337–38 (Iowa 1998). When the commissioner did otherwise—looking back and assuming jurisdiction based on 1994 law—it focused on the parties' status predominantly to determine whether it conferred jurisdiction. Yet, jurisdiction cannot be conferred based on the parties' status alone; it is a statutory and constitutional inquiry. *See Smith v. Smith*, 646 N.W.2d 412, 414–15 (Iowa 2002); *see also Matejski*, 419 N.W.2d at 579. The commissioner's subject matter jurisdiction must be considered in light of the law at the time the suit was filed, which included the amendment to section 85.71(2).

### 3. Applying the Post–Amendment Version of Section 85.71(2).

 We must next determine whether Gardner "[was] working under a contract of hire made in this state in employment not principally localized in any state" *and* spent "a substantial part of [his] working time working for the employer in this state." Iowa Code § 85.71(2) (emphasis added). Both parties seemingly concede that Gardner "work[ed] under a contract of hire made" in Iowa and his employment was "not principally localized in any state." *Id.* Presumably, the latter fact is established by evidence that Gardner's actual transportation work for Heartland took him to approximately forty states and he spent no more or less time in any one state. Heartland uses this evidence to argue that because Gardner spent only 2.5% of his working time in Iowa he did not spend "a substantial part of [his] working time working for the employer in this state." *Id.* It believes that *in proportion to* his total work time, Gardner's time in Iowa was not substantial. Gardner contends that his working time in Iowa was substantial in light of the fact that his work was evenly spread throughout forty states and was not any more substantial in any one place. He believes that *in relation to* his total work time, his time in Iowa was substantial.

 Iowa Code section 85.71 does not include a definition of the term "substantial." *See id.* § 85.71. In the absence of a legislatively provided definition, we must employ our normal tools of statutory interpretation to define the term and interpret the statute. *See Swanson,* 668 N.W.2d at 574–75. As we undertake this analysis, it is important to note that the issue of what is meant by "a substantial part of the employee's working time working for the employer in this state" is substantially clouded by the statute's current structure. Iowa Code § 85.71(2); *see also id.* § 85.71.

In *Henriksen,* we noted that the legislature had not included additional definitional language from the Model Act under the second (domicile) clause of Iowa Code section 85.71(1). 540 N.W.2d at 257. This language encompassed the "requirement that the employee 'spends a substantial part of his working time in the service of his employer in this or such other state' " in addition to being domiciled in the state. *Id.* (citation omitted). When amending section 85.71, the legislature chose to add the "substantial part" language to the statute but placed it in subsection (2) rather than with the second (domicile) clause of subsection (1). *See* 1997 Iowa Acts ch. 106, § 1. This has created a statute that is arguably contradictory and clearly different from other state statutes pertaining to extraterritorial jurisdiction. This has the further effect of making it difficult to find prior decisions of other courts dealing with the precise "substantial part" question raised in this appeal. *See Swanson,* 668 N.W.2d at 574–75.

Iowa Code section 85.71(2) requires that a contract for hire be made in Iowa for employment not principally localized in any state *and* that the employee spend "a substantial part of [his] working time working for the employer" in Iowa. Iowa Code § 85.71(2). Both the Model Act and other state statutes require that only the first and second of these requirements be met. *See* Model Act §§ 7(a)(2), (d)(4); *see also* Ala.Code § 25–5–35(d)(2) (2000); Ky. Rev.Stat. Ann. § 342.670(1)(b) (Michie 1997); N.M Stat. Ann. § 52–1–64(B) (Michie 2003); 77 Pa. Cons.Stat. Ann. § 411.2(a)(2) (West 2002). The Model Act approach permits a worker who has "transitory employment"—such as a truck driver—to establish jurisdiction within the state in which his contract was created so

long as his employment has not subsequently focused on another state ("principally localized") so as to trump the state of contracting's public policy interest in supervising contracts formed within its borders. *See* 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 143.04[2][c], at 143–24 to –25 (2003) [hereinafter Larson].[4] Moreover, this approach is consistent with traditional applications of various principles related to contract formation and workers' compensation law. *See id.* § 143.03[1]. In fact, this was essentially the status of Iowa law before section 85.71 was enacted by the legislature in 1973. *See* Dahl, 24 Drake L.Rev. at 351–52.

However, under Iowa's current section 85.71(2), the legislature has added an additional hurdle that the employee also show he "spends a substantial part of [his] working time working for the employer" in Iowa. The effect of this language is to require an employee seeking to invoke jurisdiction under section 85.71(2) to show that he does not have significant contact with any state while also showing he spends a substantial amount of time in Iowa. This seemingly contradictory result runs contrary to the intent behind the Model Act, which was meant to provide for eased establishment of jurisdiction by a transitory employee like Gardner.[5] *See* Model Act § 7 cmt. at 97–98. Instead of

the state simply maintaining its public policy interest in the contract formed within its borders and losing that interest only in light of another state with a higher interest—the state where employment is principally localized—section 85.71(2) may actually make it more difficult for the state to uphold its interest in supervising Iowa contracts. *See* Larson § 143.04[2][c]. In fact, in this case at least, we feel constrained to find that this is just what has happened.

As noted, other states utilizing the "substantial part" language have done so in conformance with the Model Act definition of "principally localized." This definition has been interpreted as requiring an analysis of whether an employee is domiciled and spending "a substantial part of his working time" working in the state only after the first method of determining principal localization—which considers the location of the employer's place of business and the employee's relationship to that location—has failed. Model Act § 7(d)(4); *see also Cowger v. Indus. Comm'n*, 313 Ill.App.3d 364, 245 Ill.Dec. 707, 728 N.E.2d 789, 795 (2000); *Davis v. Wilson*, 619 S.W.2d 709, 711 (Ky.Ct.App.1980); *Todacheene v. G & S Masonry*, 116 N.M. 478, 863 P.2d 1099, 1102 (App.1993); *Lambie v. Workers' Comp. Appeal Bd.*, 736 A.2d 67, 69–70 (Pa.Commw.Ct.1999). Nevertheless, some courts have had the opportunity

4. The discussion on this point at 9 Larson § 143.04[2][c], at 143–24 to –25 is particularly informative:

> In some kinds of employment, like trucking ... the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states. An employee loses this status only when his or her regular employment

> becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen so long as the employee's presence in any state, even including the original state, is by the nature of the employment brief and transitory.

5. This result also bucks traditional applications of contract and workers' compensation theory. *See* 9 Larson § 143.03[1]. We make no comment on what, if any, constitutional issues might also arise from the application of section 85.71(2) in its current form.

to determine what constitutes a "substantial part" within the confines of their respective states' extraterritorial jurisdiction statute. *See Ex parte Tri–State Motor Transit Co.,* 541 So.2d 557, 558–59 (Ala. Civ.App.1989); *Seales by Seales v. Daniel Constr. Co.,* 469 So.2d 629, 630–31 (Ala.Civ. App.1985), *overruled in part by Ex parte Robinson,* 598 So.2d 901, 904 (Ala.1991); *Cowger,* 245 Ill.Dec. 707, 728 N.E.2d at 796; *Davis,* 619 S.W.2d at 711; *Todacheene,* 863 P.2d at 1105–06; *Lambie,* 736 A.2d at 70; *Hiller v. Workmen's Comp. Appeal Bd.,* 131 Pa.Cmwlth. 189, 569 A.2d 1024, 1028 (1990); *Robbins v. Workmen's Comp. Appeal Bd.,* 91 Pa.Cmwlth. 269, 496 A.2d 1349, 1352 (1985). No jurisdiction has adopted the relative approach advanced by Gardner for determining whether his employment was substantial. Instead, each of the other jurisdictions has simply looked at the whole picture of a claimant's employment to see what proportion of that employment time was spent working in their state.[6] Significantly, none have found an amount of working time so low as 2.5% to constitute "a substantial part of the employee's working time working for the employer in [the] state." Iowa Code § 85.71(2); *see also Tri–State Motor Transit Co.,* 541 So.2d at 559 (employees' time in state not substantial); *Seales by Seales,* 469 So.2d at 630–31 (approximately 53% of time spent in state not substantial); *Cowger,* 245 Ill.Dec. 707, 728 N.E.2d at 796 (infrequent in-state layovers while waiting for work assignments not substantial); *Davis,* 619 S.W.2d at 711 (20% of time spent in state is substantial); *Todacheene,* 863 P.2d at 1106 (prior year of working in state before out-of-state accident is substantial); *Lambie,* 736 A.2d at 70 (two days a week not substantial); *Robbins,* 496 A.2d at 1352 (delivery of fourteen of thirty-seven loads and other driving time substantial).

Moreover, despite the extensive and convoluted background and evolution of section 85.71(2), the mere fact it was amended by the legislature exhibits some measure of legislative intent. Clearly, the legislature intended to effect a change in the law when it amended subsection (2). The alteration it chose indicates its belief that jurisdiction under subsection (2) should be established by something more than the limited employment-related contact a transitory employee would have with a state in which his employment is not

---

6. Some courts have taken a particularly holistic approach to determining what constitutes "a substantial part of the employee's working time working in [the] state" that examines an employee's employment relationship to an employer in the past, present, and future (as if no injury had occurred) to determine whether a "substantial" part may be established. Iowa Code § 85.71(2); *see also Seales by Seales v. Daniel Constr. Co.,* 469 So.2d 629, 630–31 (Ala.Civ.App.1985), *overruled in part by Ex parte Robinson,* 598 So.2d 901, 904 (Ala. 1991); *Todacheene v. G & S Masonry,* 116 N.M. 478, 863 P.2d 1099, 1105–06 (App. 1993). These jurisdictions seemingly contemplate the inclusion of some normal administrative operations (receiving orders, filing paperwork, etc.) in this calculation. *See Seales by Seales,* 469 So.2d at 630–31; *Todacheene,* 863 P.2d at 1105–06. While this is an intriguing—albeit little accepted—approach, we are not inclined to adopt it in light of our statute's requirement that an employee spend "a substantial part of [his] *working time working ... in* the state." Iowa Code § 85.71(2) (emphasis added). Gardner's initial and occasional interaction with Heartland in Iowa involved administrative activities preliminary to his work providing driving and delivery services for the transport of goods or was limited to communication of work assignments and exchanges of paper work. While clearly related to his work, none of these activities significantly increased his *working* time in Iowa. *See id.* Moreover, other subsections of the statute—particularly subsection (1)—appear to already contemplate the role of such administrative activities by considering jurisdiction based on an employer's "place of business." *See id.* § 85.71(1).

principally localized. In fact, if the legislature had not amended section 85.71(2), jurisdiction *may* have been established based in part on the same key evidence that Gardner does not work more than 2.5% in any one place that he here asserts as evidence that he actually spends "a substantial part of [his] working time working for [the] employer in" Iowa. Iowa Code § 85.71(2). The legislature clearly intended to up the jurisdictional ante by departing from prior law granting jurisdiction based on an employee's contract for hire and limited contact with the state to now require that an employee also spend "a substantial part of the employee's working time working for [the] employer in" Iowa. *Id.*

Ultimately, Gardner simply did not spend "a substantial part of [his] working time working" for Heartland in Iowa. *Id.* For this reason, the statutory prerequisites for the exercise of subject matter jurisdiction over his claim by an Iowa judicial body were not established. *See id.* Gardner's claim was wrongly filed in Iowa.[7] Therefore, we now exercise the duty of any court upon finding that it does not have subject matter jurisdiction and dismiss this action for want of that jurisdiction. *See Steel Co.*, 523 U.S. at 94, 118 S.Ct. at 1012, 140 L.Ed.2d at 227; *Bailey*, 576 N.W.2d at 337–38.

The result we reach in this case is done with some disinclination. However, while the legislative standard challenged in this case would appear to be capable of being satisfied only in rare circumstances, we cannot say the standard enacted is absurd or ineffectual. Ultimately, we are bound by the separate and distinct roles of our three branches of government and our fundamental and essential respect for the lawmaking function of the legislative branch. It is outside the role of the judicial branch to intrude into this function. Our respect for this venerable and important principle is greater than any particular unfair result we may perceive in a particular case. If our legislature finds, upon consideration of this case, that the statute at issue indeed functions in a manner that was not anticipated, it can, and, we trust, will, change it to give it different meaning.

**REVERSED AND DISMISSED.**

All justices concur except WIGGINS, J., who takes no part.

---

**7.** Although Gardner's claim was wrongly filed in Iowa, it appears his claim could have been brought in Georgia. Richard C. Kissiah, *Georgia Workers' Compensation Law* § 2.02, at 97 (2d ed. 2002) ("Georgia has long recognized that there is Georgia workers' compensation jurisdiction with regard to any injury that occurs within the territorial limits of Georgia." This jurisdiction "exists even if the injured employee was not a Georgia resident and even if the contract of employment was not made in Georgia . . . ." (Footnotes omitted.)). The apparent viability of a claim in Georgia reveals that our determination in this case that Gardner's claim was not viable in Iowa does not cause the wholesale elimination of all of his substantive rights related to a claim for his 1996 injury, subject, of course, to any applicable statute of limitations that may have run while Gardner pursued his claim in Iowa. In actuality, the only alleged right affected by our disposition is Gardner's "right" to bring a claim for benefits *in Iowa*. Of course, our workers' compensation statute is replete with provisions that tailor a claimant's right to recover Iowa workers' compensation benefits.